229 N.J. Super. 390 (1988)
551 A.2d 1001
HELDOR INDUSTRIES, INC., PLAINTIFF-APPELLANT,
v.
ATLANTIC MUTUAL INSURANCE COMPANY, A NEW YORK CORPORATION; LINCOLN INSURANCE COMPANY, A DELAWARE CORPORATION, AND PURITAN INSURANCE COMPANY, A CONNECTICUT CORPORATION, DEFENDANTS-RESPONDENTS, AND AMBASSADOR INSURANCE COMPANY, A VERMONT CORPORATION; CANADIAN UNIVERSAL INSURANCE COMPANY, LTD., A CANADIAN CORPORATION; CONTINENTAL CASUALTY COMPANY, AN ILLINOIS CORPORATION, FEDERAL INSURANCE COMPANY, A NEW JERSEY CORPORATION; GREAT AMERICAN SURPLUS LINES INSURANCE COMPANY, AN OHIO CORPORATION; AND HIGHLANDS INSURANCE COMPANY, A TEXAS INSURANCE COMPANY, DEFENDANTS. LINCOLN INSURANCE COMPANY, THIRD-PARTY PLAINTIFF,
v.
PIPER POOLS AND PIPER POOLS CHERRY HILL INC., THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 18, 1988.
Decided December 13, 1988.
*391 Before Judges DREIER and HAVEY.
*392 Jeffrey L. Shanaberger argued the cause for appellant (Brener, Wallack & Hill, attorneys; Jeffrey L. Shanaberger on the brief).
Elliott Abrutyn argued the cause for respondent Atlantic Mutual Insurance Company (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; Elliott Abrutyn of counsel; Carolyn C. Markason on the brief).
Thomas A. Harley argued the cause for respondent Lincoln Insurance Company (Carney & Wilson, attorneys; Thomas A. Harley on the brief).
Lester E. Fetell argued the cause for respondent Puritan Insurance Company (Lester E. Fetell on the brief).
The opinion of the Court was delivered by HAVEY, J.A.D.
Plaintiff Heldor Industries, Inc. (Heldor), appeals from orders for summary judgment dismissing its declaratory judgment action against defendants Atlantic Mutual Insurance Company (Atlantic), Lincoln Insurance Company (Lincoln), and Puritan Insurance Company (Puritan).[1] In its suit, Heldor demanded that defendants provide coverage under their general liability policies issued to Heldor for a claim made against Heldor by Piper Pools, Inc. (Piper). In granting summary judgment, the motion judge concluded that Piper's claim against Heldor fell within the business risk exclusion of the policy. On appeal Heldor contends that coverage exists because its product caused damage to property of third parties. It also argues that defendants had a duty to defend against Piper's claim because Piper alleged a cause of action in its complaint against Heldor for which coverage is afforded. We now affirm.
*393 The policies issued by defendants indemnified Heldor against loss from the liability imposed by law for bodily injury and property damages caused by an "occurrence." "Occurrence" is defined as:
... an accident, including continuous or repeated exposure to conditions which result in bodily injury or property damage neither expected nor intended from the standpoint of the insured.
Each policy contained the following exclusions:
(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from
(1) a delay in or lack of performance by or on behalf of the named insured of any contract or agreement, or
(2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured;
........
(n) to property damage to the named insured's products arising out of such products or any part of such products;
(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;
(p) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein[.]
Heldor, a manufacturer of swimming pool components, filed an action against Piper on a past due book account for products Heldor had sold to Piper. Piper counterclaimed, alleging that Heldor breached its contract and express and implied warranties by selling and delivering defective "coping" to Piper, a product used to hold pool liners to the walls of swimming pools, and to provide a safe, non-slip surface surrounding the edge of the pool. Piper alleged that it spent substantial monies in repairing swimming pools it had sold to homeowners and that its reputation and good will were damaged, resulting in substantial loss of profits.
After defendants refused to provide a defense to Heldor in the Piper litigation, it filed the present declaratory judgment *394 action against defendants demanding a defense and coverage. Thereafter, Piper's damage claim in the underlying action against Heldor for the cost of repairing the swimming pools was dismissed. As a result, Piper and Heldor entered into an agreement under which Heldor agreed to pursue the present declaratory judgment action, and to pay Piper $250,000 as settlement for Piper's remaining claims if defendants were ordered to provide Heldor coverage.
Heldor moved for partial summary judgment against Lincoln and Atlantic. Defendants cross-moved, arguing that the damages claimed by Piper fell with the business risk exclusion of their policies. The motion judge found fact issues existed respecting the nature of Piper's claims and denied the motions. Thereafter, Heldor and Puritan cross-moved for summary judgment. In support of its motion, Heldor submitted the affidavit of George Piper, President of Piper, who stated that beginning in 1978 Piper began receiving complaints that the non-skid paint finish applied to Heldor's coping material was peeling, leaving the bare aluminum exposed, creating an undesirable appearance as well as an unsafe, slippery condition.
Piper claimed that the company lost over $500,000 in business profit as a result of the problems with the swimming pools. He also stated that in order to replace the defective coping, it would be necessary to jackhammer the concrete deck of the pools to remove the coping. He acknowledged, however, that Piper had not used "this methodology" on the swimming pools because of the prohibitive cost. The only removal of decking was performed by Piper's expert for demonstration purposes in the preparation of a video for use in the underlying suit against Heldor. Piper also claimed that the property values of its swimming pool customers had decreased as a result of the defective condition of their pools.
Puritan submitted Heldor's answers to interrogatories and Piper's deposition which disclosed that no personal injury claims had been made against Heldor or Piper and that no claims had *395 been made by swimming pool owners for property damage to their decking or for diminution in their property values, arising out of the defective coping.
In granting summary judgment in favor of Puritan, the motion judge noted:
... the absence of claims that the coping caused any bodily injury or damaged any property of customers on whose premises a pool was installed. Customer complaints expressed the apparent nature of the injury suffered, i.e. the unsightliness of the pool.
The judge concluded that Piper sought to recover "the enhanced costs of remedying the defective coping[,]" and nothing more. Thus, the judge reasoned that replacement or repair of the faulty goods fell within the business risk exclusions of the policies. Alternatively, the judge concluded that any damage to concrete decking in the repair or replacement of the coping would not be an "occurrence" since the voluntary and deliberate damaging of the deck would be "expected or intended." Thereafter, Atlantic Mutual and Lincoln moved for summary judgment, and the motions were granted.
Defendants' policies insured Heldor against the possibility that Heldor's product, once relinquished and incorporated into the buyer's product, will cause bodily injury or property damage other than to the product itself. Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 240 (1979); Unifoil Corp. v. CNA Ins. Companies, 218 N.J. Super. 461, 470 (App.Div. 1987). The business risk exclusions in the policies apply to claims for damages to the insured's own product arising out of the product's defective nature. Henderson, Insurance Protection for Product Liability and Completed Operations  What Every Lawyer Should Know, 50 Neb.L.Rev., 415, 418 (1971). As Dean Henderson observes:
The insured, as a source of goods or services, may be liable as a matter of contract law to make good or products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product *396 or completed work is not that for which the damaged person bargained. [Weedo, supra, 81 N.J. at 240; quoting Henderson, supra, 50 Neb.L.Rev. at 441, emphasis supplied.]
As made clear by Weedo and Dean Henderson, the insured assumes the risk of necessary replacement or repair of faulty goods as part of the cost of doing business, but passes on to the insurance carrier the risk of personal injury or damage to property of third parties caused by the faulty goods. 81 N.J. at 239-240. See also Juliano v. Gaston, 187 N.J. Super. 491, 497 (App.Div. 1982), certif. den. 93 N.J. 318 (1983). Thus, in Hartford Ins. Group v. Marson Constr. Corp., 186 N.J. Super. 253, 256-257 (App.Div. 1982), certif. den. 93 N.J. 247 (1983), coverage was afforded an insured whose defective construction of building walls damaged metal panels installed by another contractor, because the insured's defective workmanship caused damage to a third party.
Applying the foregoing principles to the facts before us, it is clear that no coverage exists. The essence of the discovery in the coverage litigation was that no actual damage to the decking occurred and no claims were made against Piper or Heldor by the swimming pool owners for personal injury or damage to their property. Piper's deposition testimony confirms this fact:
Q. Mr. Piper, my question is very narrow. I'm going to phrase it again. Did you receive a notification, report from any of your customers that property which belong to them was damaged by reason of the pool installation?
........
A. The complaints I had  I'll answer it the best I can. The complaint I had was that the pool was not what they had bought. And that it was not  you know, whether it is damaging their value to their property or not, they did not spell that out to me.
Q. Did they ever tell you that the pool you installed caused physical damage to any portion of the property which belonged to them which you had nothing to do with, which you didn't install? That their lawns were ruined because of it or anything?
A. No. It would strictly be the value of their property. That's all they would be complaining about, was the pool and the value of their property. [Emphasis supplied].
*397 The only alteration of a swimming pool deck was performed by Piper's expert as a demonstration for purposes of the underlying trial. Therefore, as the motion judge properly concluded, the peeling caused by the coping was solely an aesthetic defect which required the repair or replacement of Heldor's own product. Piper's claims thus fell within the business risk exclusions of the policy.[2]
Aside from the claim that the coping caused damage to the swimming pool decking, Heldor also argues that "Piper's customers quite obviously sustained damage to the value [of] their pools and their homes" which constitutes property damage to a third party. "Property damage" is defined by the policies as:
... physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting thereform, or ... loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.
The simple answer to Heldor's argument is that no swimming pool owner has ever made a claim against either Piper or Heldor for damages sustained arising out of diminution in his or her property value.
Moreover, as the motion judge properly concluded, even if property value loss may be deemed a consequential loss for which coverage is afforded, there must first be a finding of physical damage to tangible property from which the consequential damages flow. See Great American Ins. v. Lerman Motors, 200 N.J. Super. 319, 322-323 (App.Div. 1984). The same is true with respect to a claim for loss of business profits. See ibid. Thus, in Great American Ins., we held that a liability *398 policy, containing the precise definition of "property damage" involved here, covered a claim for loss of profits arising out of damage to tangible property. Id. at 326. The insured was sued for profit loss arising out of the destruction of a third-party's tangible personal property caused by a fire in the insured's building. Id. at 322. Our acknowledgement that profit loss constituted "property damage" was predicated on a finding of damage to tangible property. Id. at 324. It was the damage to the tangible property that provided coverage. The consequential profit loss itself was not "property damage." Unlike Great American Ins., here, no physical property damage to a third party has been established. Thus, the consequential damage claims asserted by Piper as to its customers' property value loss and its lost profits are not covered by Heldor's policies.[3]
Heldor also contends that defendants owed a duty to defend because Piper's counterclaim stated a cause of action "which may potentially" come within the coverage provided by the policies.[4] It is true that the general approach is that the carrier has a duty to defend whenever the underlying complaint alleges a basis for liability within the covenant to pay. Burd v. Sussex Mutual Insurance Company, 56 N.J. 383, 388-390 (1970); Danek v. Hommer, 28 N.J. Super. 68, 77 (App.Div. 1953), aff'd o.b. 15 N.J. 573 (1954); Hartford Ins. Group v. Marson Const. Corp., supra, 186 N.J. Super. at 257.
However, the duty to defend and indemnify are "closely related and ... neither duty exists except with respect to *399 occurrences for which the policy provides coverage." Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18, 22 (1984). When coverage depends upon a factual issue "which will not be resolved by the trial of the third party's suit against the insured, the duty to defend may depend upon the actual facts and not upon the allegations of the complaint." Burd, supra, 56 N.J. at 388-389. In such a case, the carrier may be within its right to deny a defense and await resolution of the coverage issue. Hartford Acc. & Indem. Co., supra, 98 N.J. at 24-25. Indeed, the carrier's counsel may be in conflict by assuming the defense of the insured in the underlying suit as well as representing the insurer in the coverage litigation. Ibid.
Here, defendants properly denied a defense at the outset of the underlying litigation because of the clear fact questions relating to their duty to indemnify. The coverage issues were not disposed of by the underlying case. Thus, the duty to defend was dependent upon resolution of fact issues as to the exact nature of the damages sustained by Piper. Since the motion judge found that the exclusions applied, no duty to defend existed.
AFFIRMED.
NOTES
[1] Heldor did not oppose dismissal motions made by the remaining defendants, who were excess carriers.
[2] Since we find that the exclusions apply, we need not address the motion judge's finding that the destruction of the decking would not be an "occurrence" because it would be voluntary and deliberate. We add only that an "occurrence" means an accident which results in property damage "neither expected nor intended from the standpoint of the insured." [Emphasis supplied]. It may be argued that Piper's deliberate dismantling of the decking is not expected or intended from the standpoint of Heldor, since it would be Piper, and not Heldor, committing the intentional act.
[3] Heldor cites the following cases in support of its claim that property value loss constitutes property damage: Hauenstein v. St. Paul  Mercury Indem. Co., 242 Minn. 354, 65 N.W.2d 122, 125 (1954); Stone & Webster Engineering Corp. v. American Motorist Insurance Co., 458 F. Supp. 792, 794-795 (E.D.Va. 1978). However, Weedo at 81 N.J. at 243, n. 4, 405 A.2d 788, expressly dissapproves of these cases to the extent that they are "at odds with the underlying rationale" of Weedo. The motion judge correctly observed that no New Jersey case has held that property value loss constitutes "property damage."
[4] This argument pertains only to Lincoln and American, since Puritan was an excess carrier whose policy did not provide for a duty to defend.