**ELIZABETHTOWN WATER COMPANY, Plaintiff,**

v.

**HARTFORD CASUALTY INSURANCE COMPANY and Centennial Insurance Company, Defendants.**

**No. CIV. A. 95-3326.**

United States District Court, D. New Jersey.

March 27, 1998.

Opinion Denying Reargument May 29, 1998.

Carl R. Woodward, III, Carella, Byrne, Bain, Gilfillan, Cecchi & Stewart, Roseland, NJ, for Plaintiff.

Robert D. Kretzer, Lamb, Hartung, Kretzer, Reinman & Depascale, Jersey City, NJ, for Defendant Hartford.

Wendy Lee Mager, Smith, Stratton, Wise, Heher & Brennen, Princeton, NJ, for Defendant Centennial.

### OPINION

WOLIN, District Judge.

This matter is before the Court on Centennial Insurance Co.'s ("Centennial") motion for summary judgment on Elizabethtown Water Company's ("Elizabethtown") claims for indemnity. Hartford Casualty Insurance Company ("Hartford") also moves for summary judgment of Elizabethtown's claims for indemnity. The Court has decided these motions upon the written submissions of the parties pursuant to Rule 78 of the Federal Rules of Civil Procedure. Elizabethtown also moves the Court to strike sections of Centennial's reply brief.

### BACKGROUND

In an underlying action, Big Sheepy Partnership ("Big Sheepy") and Sheep Hill Associates (collectively "developers") filed a complaint in New Jersey Superior Court against Elizabethtown. Developers alleged that in 1986, Big Sheepy purchased a large tract of land for development in Somerset County because Elizabethtown represented that it would and could supply adequate water to the future development. Developers alleged that in 1988, Big Sheepy entered into an agreement with Elizabethtown in which Big Sheepy agreed to pay for an extension of water mains from Elizabethtown's water supply to the houses built in the development. Implicit in the contract was that Elizabethtown would be able to provide water service to all the houses. (Centennial Ex. A).

According to the underlying complaint, Elizabethtown failed to supply water for all of the houses until October 1990, even though the water mains were complete in July 1988, and even though Elizabethtown had the abili-

ty to provide water to all of the houses and lots. Developers claimed that Elizabethtown's failure to provide water caused them to lose numerous sales and adversely affected their reputation. Thus, developers sought equitable relief and compensatory, punitive, and treble damages based on breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, equitable fraud, and the New Jersey Consumer Fraud Act. (Centennial Ex. A). In an answer to an interrogatory, developers claimed that the injury to their business reputation was $1,000,000, and that their carrying costs, i.e., property taxes, mortgage payments, auction expenses, promotion expenses, and Internal Revenue Service expenses, exceeded $2,000,000.[1] Developers also claimed lost sales.

Centennial and Hartford ("defendants") are Elizabethtown's insurers. Centennial issued Elizabethtown two Comprehensive General Liability Policies ("CGL Policy") with effective dates of June 30, 1987, to June 30, 1988, and June 30, 1988, to June 30, 1989. Centennial also issued a Commercial Umbrella Policy ("Umbrella Policy") with effective dates of June 30, 1988, to June 30, 1989. Hartford issued two Comprehensive General Liability Policies ("Hartford Policy") to Elizabethtown with effective dates of June 30, 1989, to June 30, 1990, and June 30, 1990, to June 30, 1991.

Defendants allege that they received their first notice of the existence of the underlying lawsuit in mid–1993, almost two years after the underlying litigation commenced. After receiving notice of the underlying suit, defendants replied with independent letters discussing their interpretations of the relevant policy provisions and concluding that they would not cover Elizabethtown's alleged loss. (Centennial Ex. B; Hartford Ex. E).

Centennial denied coverage because the underlying complaint did not allege "bodily injury" or "property damage" caused by an "occurrence" as defined by the CGL Policy and did not allege "advertising injury," "personal liability injury," or "property damage liability" caused by an "occurrence" as defined by the Umbrella Policy. The CGL Policy defines "property damage" as:

(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or

(2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

The CGL Policy defines "occurrence" as: "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Centennial also informed Elizabethtown that it was denying coverage because Elizabethtown failed to comply with the policies when it failed to notify Centennial "as soon as practicable" of an "occurrence," to forward a summons "immediately," and to "cooperate" with Centennial in its defense. (Centennial Ex. B).

Hartford denied coverage on the grounds that the allegations and circumstances surrounding plaintiff's case did not comport with the definitions for "occurrence" or "property damage" in the Hartford Policy. (Hartford Ex. E). The Hartford Policy defines "property damage" as:

a. Physical injury that occurs during the policy period to tangible property, including all resulting loss of use of that property; or

b. Loss of use that occurs during the policy period of tangible property that is not physically injured, provided such loss of use is caused by an occurrence during the policy period.

The Hartford Policy defines "occurrence" with respect to bodily injury and property damage as: "a. Bodily injury or property damage: an accident, including continuous or repeated exposure to substantially the same general conditions." In an earlier letter, Hartford informed Elizabethtown that "serious coverage questions" existed in that Elizabethtown failed to provide immediate notice of its claim and that the date of the underlying loss may have occurred outside the peri-

---

1. The Court notes that the $2,000,000 figure may include some expenses twice. It is unclear from the addendum to the interrogatory whether certain items are double counted.

od covered by the Hartford Policy. (Hartford Ex. C).[2]

The Hartford Policy also contains a "Water Utilities Limitation Endorsement," which provides:

It is agreed that the insurance does not apply to property damage arising out of the inability of the insured to supply water in quantities of pressure sufficient to meet the demands of the insured's customers, unless such inability is the result of an occurrence not related to a shortage of water or distributional capacity nor fluctuation in the level of demand of the insured's customers.

The Hartford Policy also contains general exclusions, including:

K. Property Damage to:

. . .

(3) Property of which your product or your work forms a part or property that has not been physically injured, arising out of:

(b) A delay or failure by any insured or anyone acting on an insured's behalf to perform a contract or agreement in accordance with its terms.

On November 3, 1994, Elizabethtown wrote defendants letters advising them that the underlying case had settled, and that Elizabethtown would pay $1.75 million to developers. In reaching their settlement, the parties entered into a release in which they agreed that "the monies are being paid because of [Elizabethtown's] potential liability to developers on the negligence count only." (Centennial Ex. C). Centennial promptly responded that it was disclaiming coverage. (Centennial Ex. D).

In August 1995, Centennial sent Elizabethtown a letter supplementing its prior disclaimers in order to inform Elizabethtown that it also disclaimed coverage under the "Failure to Supply Water Endorsements" in the CGL and Umbrella Policies. (Centennial Ex. F). The CGL Policy's Failure to Supply Water Endorsement provides:

It is agreed that this policy does not apply to personal injury or bodily injury arising out of the interruption or [impairment] of electrical, gas or water service.

Property damage shall not include damage arising out of inability of the insured to supply gas and/or electricity or water in quantities sufficient to meet the demands of the insured's customers unless such liability shall be the result of a sudden and unforseen occurrence resulting from physical damage to tangible property and which is not related to a shortage of gas, electricity, water, distributional or generating capacity not fluctuation, or fluctuation in the level of demand of the insured's customers.[3]

The 1988–89 Umbrella policy included a "Failure To Supply Endorsement" that provided: "It is agreed that this policy does not apply to personal injury[,] bodily injury or property damage arising out of the interruption or impairment of electrical, gas or water service."

In July 1995, Elizabethtown filed a three-count complaint. In the First Count, Elizabethtown sought a declaratory judgment that defendants are obligated to reimburse it for money it paid to developers unless the claims fall outside the policy period and for legal fees and costs. In the Second Count, Elizabethtown claimed that defendants breached their contracts by failing to defend and indemnify Elizabethtown. On September 30, 1996, this Court granted defendants' motions

---

**2.** Neither Centennial nor Hartford raises Elizabethtown's late notice as a reason for granting summary judgment. Although defendants are not precluded from raising that defense at trial, the Court notes that "[i]t is not easy for an insurer to raise a valid defense of late notice under New Jersey law. The insurer must show 'appreciable prejudice.' The measure is whether the insurer can establish that 'substantial rights have been irretrievably lost.'" *Pittston Co. v. Allianz Ins. Co.*, 905 F.Supp. 1279, 1311 (D.N.J. 1995) (quotations omitted), *reversed in part by* 124 F.3d 508 (1997).

**3.** The Court notes that the actual language is "interruption or improvement of electrical, gas or water service." Centennial submits that improvement was a typographical error, and that the word should have been impairment. Elizabethtown has not objected to that clarification, and the Court will use impairment, and not improvement, in analyzing this case.

for partial summary judgment on Elizabethtown's Third Count.

Defendants now move the Court to enter summary judgment on the remainder of Elizabethtown's claims because Elizabethtown's failure to provide water to developers is not covered in the insurance policies they issued to Elizabethtown.

## DISCUSSION

### I. Standard for Summary Judgment

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir.1986). In making this determination, a court must draw all reasonable inferences in favor of the non-movant. *See Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. dismissed*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). Whether a fact is "material" is determined by the substantive law defining the claims. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *United States v. 225 Cartons*, 871 F.2d 409, 419 (3d Cir.1989).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Summary judgment must be granted if no reasonable trier of fact could find for the non-moving party. *See id.*

When the non-moving party bears the burden of proof at trial, the moving party's burden can be "discharged by 'showing'— that is, pointing out to the District Court— that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party has carried its burden of establishing the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that

there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When the non-moving party's evidence in opposition to a properly-supported motion for summary judgment is merely "colorable" or "not significantly probative," the Court may grant summary judgment. *See Anderson*, 477 U.S. at 249–50.

Further, when a non-moving party who bears the burden of proof at trial has failed, in opposition to a motion for summary judgment, to raise a disputed fact issue as to any essential element of his or her claim, summary judgment should be granted because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

### II. Interpreting the Insurance Policies

Centennial contends that summary judgment should be entered for two reasons: (1) the claims for which Elizabethtown seeks indemnity do not constitute property damage under the policies; (2) the Failure to Supply Water Endorsements exclusions bar Elizabethtown's request for coverage. Hartford adopts Centennial's arguments because the wording of the provisions is similar and because the intent behind the provisions is the same. Hartford also asserts that General Exclusion K bars coverage of Elizabethtown's losses.

A court should construe insurance policies liberally in favor of the insured in order to ensure that coverage is extended to any fair interpretation of the policy. *See Longobardi v. Chubb Ins. Co. of N.J.*, 121 N.J. 530, 537, 582 A.2d 1257 (1990). Moreover, insurance contracts are to be construed in accordance with the insured's reasonable expectations. *See Sparks v. St. Paul Ins. Co.*, 100 N.J. 325, 338, 495 A.2d 406 (1985). However, "[t]he words of an insurance policy should be given their ordinary meaning, and in the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability." *Longobardi*, 121 N.J. at 537, 582 A.2d 1257.

■ When construing an insurance policy, courts must answer two questions.

First, [it] must determine if any patent ambiguity exists in the policy language such that coverage must be provided. Second, if such an ambiguity does not exist, [it] must determine, were coverage denied, whether the policy language is insufficiently clear such that the average policyholder would be deprived of a reasonable expectation of coverage.

*Oritani Sav. and Loan Ass'n v. Fidelity and Deposit Co. of Md.,* 989 F.2d at 635, 638 (3d Cir.1993). An ambiguity can arise from either the plain language or the application of the language to a set of facts. *See MacBean v. St. Paul Title Ins. Corp.,* 169 N.J.Super. 502, 507, 405 A.2d 405 (App.Div.1979).

Elizabethtown and defendants agree that Elizabethtown's claim for indemnity under the CGL Policy and the Hartford Policy is based on the "loss of use" portion of the definition for property damage. Thus, the Court will focus on that portion of the definitions.

The Court notes that Centennial's and Hartford's definitions for property damage and occurrence are substantially similar such that they will be treated as one and the same. Both definitions of property damage include loss of use of tangible property, which is not physically injured or destroyed provided such loss is caused by an occurrence. Both definitions define occurrence as an accident, but Centennial modifies "accident" with "which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The Court finds the difference in the definitions to be insignificant, and will limit its interpretation of occurrence to "accident" because the two definitions clearly intended to cover the same circumstances.

Defendants argue that the circumstances and facts surrounding developers' claims do not constitute a loss of use. Elizabethtown contends that its negligence was an occurrence that caused developers to suffer a loss of use of their real property, i.e., the opportunity to develop the property for sale. It adds that the definitions of property damage and occurrence are patently ambiguous because defendants' construction of the language in the insurance policies conflicts with the plain language in the policies, New Jersey case law, and its reasonable expectations.[4]

### A. Loss of Use

Elizabethtown argues that their negligence caused developers to lose the use of their property, i.e., they lost the ability to develop the property, subdivide the property, and ultimately sell the property. Elizabethtown also states that developers' inability to use their property caused developers to sustain damages in that they paid carrying costs, lost sales, and suffered injury to their reputation. Defendants focus their analysis on damages. They contend that lost profits and goodwill do not constitute the loss of use of tangible property.

No New Jersey court has interpreted the phrase "loss of use of tangible property." However, CGL policies throughout the country generally contain the same language and definitions, and the evolution and inclusion of the phrase in the definition of property damage is clear. In 1973, insurers revised their definition of "property damage" and adopted the current two-prong definition because the old definition, "injury to or destruction of tangible property," resulted in inconsistent interpretations of the phrase—some courts found that the definition included non-physical injuries while other courts denied coverage unless physical contact between the insured and the injured property existed. *See Lucker Mfg. v. Home Ins. Co.,* 23 F.3d 808, 815 (3d Cir.1994). "[T]he revised language . . . allows coverage for both physical and non-physical injuries." *Id.*

The classic example of a loss of use injury is a case in which a manufacturer of

---

4. Elizabethtown also asserts that summary judgment should not be entered because defendants have not submitted any evidence to explain why developers' injuries do not constitute property damage. Elizabethtown's reliance on *Travelers Insurance Co. v. Penda Corp.,* 974 F.2d 823, 833 (7th Cir.1992), is misplaced because defendants, unlike *Travelers,* have not just listed policy exclusions to support its position, but have explained why the provisions are applicable.

construction cranes sells a defective crane which collapses in front of a restaurant, thereby impairing the restaurant's income. If the restaurant sues the manufacturer and recovers the lost income, the manufacturer would be covered by the "loss of use" component of the CGL policy.

*Id.* at 815 n. 6.

Moreover, in interpreting the same language in an insurance policy involving Wisconsin and Pennsylvania, the Third Circuit concluded that losing the opportunity to sell a product is a "loss of use." *Id.* at 816. In *Lucker*, Lucker contracted to design and manufacture a product for Shell Oil Company. Lucker purchased castings, a component, for its product from Grede. Those castings were defective, and Shell required Lucker to alter the design of the product to ensure that the defective castings would not make the ultimate product defective. Lucker sued Grede, and ultimately settled the case for $600,000. Lucker then sued Grede's insurer, Home Insurance Company, because Home had not defended Grede and because Lucker received Grede's right to sue Home as part of the settlement. The district court found that no loss of use existed and granted summary judgment for Home. *Id.* at 810–12.

In reversing on the issue of "loss of use," the Third Circuit framed the interpretation as "whether the lost 'use' has to have been a lost *physical* use of the property, or whether it can also include a lost *non-physical* or *economic* use of the property." *Id.* at 815. The panel determined "that both the purposes behind liability insurance and the case law interpreting liability insurance suggest that the loss of a non-physical use of a product, such as offering it for sale, should be considered a 'loss of use.'" *Id.* at 816. Thus, it found that the reduced value of Lucker's product caused by Shell's rejection constituted a loss of use. *Id.* The panel concluded that the language was somewhat ambiguous, and that its ruling complied with the principle that ambiguities be decided in favor of the insured. *Id.* at 818. Ultimately, the Court affirmed because it found that Lucker's design was not tangible property. *Id.* at 821.

■ Developers' damages in this case are quite similar to that in *Lucker*. Here, developers could not use their property for its intended use because no person would purchase a lot or house that did not have an adequate water supply. Moreover, this case is no different from the classic example. Like the restaurant owners, developers cannot use their land because Elizabethtown did not connect its water supply to developers' water main extension. As stated in the classic example, if the injured party sues and recovers, the insured is covered by the loss of use provision. Therefore, Elizabethtown has shown that developers lost the use of the property.

Defendants' reliance on *Heldor Industries, Inc. v. Atlantic Mutual Insurance Co.*, 229 N.J.Super. 390, 551 A.2d 1001 (App.Div. 1988), and Elizabethtown's reliance on *Great American Insurance Co. v. Lerman Motors, Inc.*, 200 N.J.Super. 319, 491 A.2d 729 (App. Div.1984), are misplaced because neither panel interpreted or dealt with "the loss of use" provision. However, both panels found that a plaintiff could recover lost profits as consequential damages of property damage under CGL policies. *Heldor*, 229 N.J.Super. at 397, 551 A.2d 1001; *Great American*, 200 N.J.Super. at 326, 491 A.2d 729. *Heldor* limited its ruling to situations where a link could be provided between the lost profits and *physical* damage to property. 229 N.J.Super. at 397–98, 551 A.2d 1001.

*Heldor's* and *Great American's* basic proposition is consistent with *Lucker*. *Heldor's* limitation does not, however, comport with the second prong of the definition of property damage. The Court finds no reason to follow *Heldor* because it is inconsistent with *Lucker* and because the panel in *Heldor* did not consider the loss of use provision when it limited the availability of lost profits. Moreover, if *Heldor* applied to all cases involving property damage and consequential damages, it would render the loss of use provision meaningless. Thus, the Court finds that Elizabethtown has shown that developers lost the use of their property.

## B. Occurrence

One of the reasons why defendants refused to cover Elizabethtown's claim was that they

believed that there was no occurrence. As stated *supra,* defendants' policies define occurrence as an accident.

■ "[T]he insurance company limits its coverage to accidental occurrences to preclude coverage for insureds whose conduct is intentionally-wrongful." *Voorhees v. Preferred Mutual Ins. Co.,* 128 N.J. 165, 180, 607 A.2d 1255 (1992). In New Jersey, "the accidental nature of an occurrence is determined by analyzing whether the alleged wrongdoer intended or expected to cause an injury. If not, then the resulting injury is 'accidental,' even if the act that caused the injury was intentional." *Id.* at 183, 607 A.2d 1255. Courts should examine an insured's subjective intent when determining whether to deny coverage because of intentional conduct. *Id.* at 185, 607 A.2d 1255.

The Court has discussed the insurer's ability to disclaim coverage when the insured acts intentionally because Elizabethtown bases its argument that defendants should provide coverage on its lack of intent. Elizabethtown asserts that summary judgment should not be granted because defendants have failed to show that it subjectively intended to injure developers. It also argues that the "expected or intended" language in Centennial's policy is ambiguous. Those arguments are irrelevant because the critical question is whether a genuine issue of material fact exists as to whether an accident caused the developers to lose the use of their property.

Elizabethtown claims that its negligence (and negligent misrepresentation) was the accident. It asserts that developers would not have purchased the property if Elizabethtown had not told them that it could supply them with water. Hartford responds that summary judgment should be granted because an occurrence is not defined as negligence. In fact, Hartford argues that "[w]hile negligence may cause an accident, the negligence itself is not the accident." (Hartford Reply Br. at 4).

An accident for purposes of insurance "is an event happening without any human agency, or if happening through such agency, an event which, under the circumstances, is unusual and not expected by the person to whom it happens." Black's Law Dictionary 15 (6th ed. 1990). Hartford's assertion that negligent conduct causes accidents, but negligence is not an accident is misleading because negligence can either be improper conduct or a cause of action.

When negligence means improper conduct, an accident arises only when the negligence leads to an injury, i.e., an accident is negligent conduct plus a resulting injury. For example, a driver acts negligently when he runs a stop sign, but the negligence in and of itself is not sufficient to create an accident— if the person drives away from the stop sign without hitting anyone or anything, then no accident occurs. If, on the other hand, the driver hits and injures a pedestrian, then an accident occurs. Likewise, if a municipality fails to repair a crack in a sidewalk after a resident complains about the crack, then the municipality's failure to act is negligent. If someone trips over the crack and injures himself as a result of this omission, then an accident occurs. If not, there is no accident. Thus, both active and passive negligence can cause an accident. *See* Black's Law Dictionary, *supra,* 1034.

For negligence to constitute a cause of action, a plaintiff must prove three elements: a duty or obligation, a breach of that duty, and causation to the damages, i.e., the breach caused the plaintiff's injuries. *See* Prosser and Keeton on the Law of Torts 164–65 (5th ed. 1984). Thus, if a plaintiff proves the elements of the negligence cause of action, he has shown that an accident happened for purposes of a CGL policy because the cause of action contains both improper conduct (breach of a duty) and an injury (damages).

■ In this case, Elizabethtown settled its case with the developers on the negligence cause of action. Thus, it contends that an accident occurred. A settlement termed as negligence does not prove the three elements of a negligence cause of action. The Court, therefore, finds that it cannot determine at this juncture whether an accident occurred, and that a jury must decide the issue. Moreover, Elizabethtown will have to assert independent proof of negligent conduct and an

injury at trial to establish that there was an occurrence, i.e., an accident.

Hartford's focus on the conduct aspect of negligence is not necessarily misplaced because Elizabethtown spends a lot of time discussing how its negligence, i.e., failure to provide water and wrongful misrepresentations, caused the developers to lose money. If Elizabethtown is correct, then an accident occurred. If, on the other hand, Elizabethtown is incorrect, then no accident occurred.

## C. Limitations Based on Failure to Provide Water Supply

 "[E]xclusionary clauses are enforceable only if clearly applicable, are narrowly read and any ambiguities are resolved in favor of the insured." *Morrone v. Harleysville Mutual Ins. Co.*, 283 N.J.Super. 411, 420, 662 A.2d 562 (App.Div.1995). Moreover, courts must construe exclusionary clauses strictly. *See Ellmex Constr. Co., Inc. v. Republic Ins. Co.*, 202 N.J.Super. 195, 205, 494 A.2d 339 (App.Div.1985), *certif. denied*, 103 N.J. 453, 511 A.2d 639 (1986). When construing exclusionary clauses, courts should consider whether the insurer could have used more precise language such that the matter would be beyond a reasonable question. *See Aetna Ins. Co. v. Weiss*, 174 N.J.Super. 292, 296, 416 A.2d 426 (App.Div.) (quotation omitted), *certif. denied*, 85 N.J. 127, 425 A.2d 284 (1980). The insurer has the burden of showing that the exclusion bars coverage, and that the insured's interpretation of the exclusion is entirely unreasonable. *See id.*

Centennial asserts that the Failure to Supply Water Exclusions in the CGL and Umbrella policies bar coverage in this case. Hartford also argues that its Water Utilities Limitation Exclusions [5] bars the coverage of Elizabethtown's claim. Even though the words of the exclusions differ, Hartford asserts that its Exclusion should be treated the same as Centennial's Exclusions because the intent and meaning of the Exclusions are the same. Hartford is wrong.

The second paragraph of the Failure to Supply Exclusion in the CGL Policy excludes from the definition of "property damage," an injury that arises out of the insured's failure to supply water in quantities sufficient to meet the demands of the insured's customers. However, such damage is covered if the liability arises out "of a sudden and unforseen occurrence resulting from physical damage to tangible property." The Umbrella Policy provides that the policy does not cover, *inter alia*, property damage that arises out of the interruption or impairment of water service. Hartford's Exclusion provides that property damage does not include damage caused by the inability to supply water, unless the damage arises out of an occurrence unrelated to, *inter alia*, a shortage of water.

The Court declines to treat the provisions the same because the difference in word choice is significant. Centennial's exception to the Failure to Supply Water Exclusion in the CGL Policy is limited to occurrences resulting from *physical damage* to tangible property. The exception, therefore, does not include property damage that is a "loss of use" of property. The Umbrella Policy's Exclusion does not contain any exceptions, and flatly excludes coverage related to property damage from the interruption or impairment of water service.

 Although the Court is inclined to grant Centennial's motion for summary judgment based on the plain language of the Failure to Supply Water Exclusions, it must refrain from doing so because Elizabethtown has created a genuine issue of material fact as to whether those Exclusions are ambiguous. Theresa Walczak, a Centennial employee who handled Elizabethtown's claim, wrote in her computer notepad: "Conferenced file with superior and claim manager. They agreed that a disclaimer is in order but they felt that the 'Failure to Supply Endorsement' was not applicable." (Woodward Decl. Ex. A). The previous day, Walczak wrote that she believed that Centennial should disclaim coverage because of, *inter alia*, the Failure to Supply Water Exclusion. (Woodward Decl. Ex. A). Thus, Walczak's diary makes the Exclusions ambiguous, and Centennial will have to explain why Walczak's superiors believed that the Exclusions did not bar Eliz-

5. For clarity, the Court will refer to the Endorsements as Exclusions.

abethtown's claim. The Court, therefore, denies Centennial's motion on this issue.

Hartford's Exclusion, on the other hand, permits coverage where the damage arises out of an occurrence, which is defined as an accident. As discussed *supra*, a jury question exists as to whether an occurrence exists in this case. Thus, the Water Supply Limitation Exclusion in the Hartford Policy is ambiguous, and the Court must deny Hartford's motion on this issue.

■■■ Elizabethtown also argues that the phrase "interruption or impairment" of water service in the Umbrella Policy is ambiguous because it does not indicate whether the Exclusion applies to a situation where no water supply system is in place. In essence, Elizabethtown believes that a jury should decide whether "interruption or impairment" includes delaying the *initial* supply of water. The Court agrees with Elizabethtown that "interruption or impairment" is ambiguous as applied to the facts of this case, and that a jury should determine whether the parties intended "interruption or impairment" to cover the situation in this case.

Elizabethtown also argues that Centennial failed to provide it with the proper coverage in the Umbrella Policy. It states that the parties agreed in 1987 that the Failure to Supply Water Exclusion would permit coverage for property damage arising out of an occurrence. Elizabethtown states that the current language was placed in the policy in 1988. Centennial disagrees with Elizabethtown's account of the negotiations, and asserts that the current language offers more coverage than the old Exclusion. The Court will not address this issue because the ruling that the Exclusions are ambiguous makes it moot.

#### D. General Exclusion K

Hartford claims that General Exclusion K bars coverage in this case. Elizabethtown asserts that General Exclusion K is ambiguous, and that the doctrine of *ejusdem generis* mandates that the Court not construe the exception in its broadest sense. Elizabethtown also labels this exclusion "The Products Liability Exclusion" because the exclusion omits damage to the insured's work or product or damage to another's property from the insured's work or property because of the insured's defective product or failure to fulfill its obligations under a contract.

■■■ *Ejusdem generis* is a general rule of construction that provides "where general words follow the enumeration of ... things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to ... things of the same general kind or class as those specifically mentioned." Black's Law Dictionary, *supra*, 515; *see also Cooper Dist. Co., Inc. v. Amana Refrig., Inc.*, 63 F.3d 262, 280 (3d Cir.1995). (same).

■■■ General Exclusion K provides that Hartford would not cover "property damage to ... property that has not been physically injured, arising out of ... failure by any insured ... to perform a contract or agreement in accordance with its terms." Elizabethtown asserts that the Exclusion should not be construed to its widest extent because it appears in an exclusion dealing with defective products. Elizabethtown adds that because its negligence caused the injuries, the Exclusion should not apply. It reasons that it could not have expected that the Exclusion would apply to damages arising out of negligence.

Elizabethtown's arguments beg the question of whether the Exclusion applies. *Ejusdem generis* does not apply because general words do not follow specific words in the Exclusion. Moreover, its expectations are irrelevant when the words of the Exclusion are as clear as they are in this case. The exclusion bars coverage of Elizabethtown's liability because the developers' damages were the lost use of their property, i.e., "property that has not been physically injured," and because Elizabethtown did not fulfill its agreement. The Court recognizes that Elizabethtown based its settlement with the developers on an asserted negligence claim, but to permit Elizabethtown to use "negligence" to frustrate the plain and unambiguous language of the exclusion would yield to form rather than substance. The exclusion was intended to cover situations like this

one, and thus, the Court will enter summary judgment in favor of Hartford.

### III. Motion to Strike

It is axiomatic that reply briefs should respond to the respondent's arguments or explain a position in the initial brief that the respondent has refuted. *See Egert v. Connecticut Gen. Life Ins. Co.*, 900 F.2d 1032, 1035 (7th Cir.1990) ("[A]rguments withheld until the reply brief ordinarily will not be considered.").

 Elizabethtown contends that Centennial has improperly asserted two new grounds for summary judgment in its reply brief. In its initial brief, Centennial argued that summary judgment should be granted because Elizabethtown could not meet the definition of property damage and because The Failure to Supply Exclusions barred coverage. In its reply brief, Centennial argues that it need not cover Elizabethtown's loss because the damages arose after the end of the policy period (Point II.A), and that Elizabethtown is time barred from arguing that the language is ambiguous because of the negotiations (Point II.C). Thus, Elizabethtown moves the Court to strike the new arguments from the reply brief.

The Court agrees with Elizabethtown that Centennial improperly raised Point II.A in its reply brief, and will therefore strike it from the reply brief. The Court notes, however, that Elizabethtown will have to provide proof that developers' injury occurred prior to July 1988 in order to maintain its claim under the policy that ran from June 30, 1987, to June 30, 1988. A jury will decide whether the damages occurred during the policy period.

Point II.C, on the other hand, properly responded to Elizabethtown's argument and factual recitation of the negotiations. Thus, the Court will not strike Point II.C from the reply brief. The Court notes that Point II.C was not critical to the outcome of this motion.

### CONCLUSION

For the reasons stated *supra*, the Court grants Hartford's motion for summary judgment and denies Centennial's motion for summary judgment. The Court also grants Elizabethtown's motion to strike Point II.A of Centennial's reply brief, but denies the motion as to Point II.C.

An appropriate Order is attached.

### *ORDER*

In accordance with the Court's Opinion filed herewith,

It is on this ___ day of March, 1998

ORDERED that defendant Hartford Casualty Insurance Company's motion for summary judgment is granted; and it is further

ORDERED that defendant Centennial Insurance Company's motion for summary judgment is denied; and it is further

ORDERED that plaintiff Elizabethtown Water Company's motion to strike Point II.A of Centennial's reply brief is granted, but the motion as to Point II.C is denied; and it is further

ORDERED that trial is scheduled for May 5, 1998; and it is further

ORDERED that Elizabethtown and Centennial meet with Magistrate Judge Joel A. Pisano for a pre-trial conference.

### OPINION DENYING REARGUMENT

WOLIN, District Judge.

Pursuant to Local Civil Rule 7.1(g), Elizabethtown Water Company ("Elizabethtown") moves for reargument of this Court's Opinion and Order dated March 27, 1998. Although Elizabethtown has presented the Court with two creative arguments, the Court will deny Elizabethtown's motion because the arguments do not alter the Court's initial analysis.

### PRIOR HOLDING

On March 27, 1998, this Court issued an Opinion and Order denying Centennial Insurance Company's ("Centennial"), defendant, motion for summary judgment and granting Hartford Casualty Insurance Company's ("Hartford"), defendant, motion for summary judgment. Only two of the Court's rulings are relevant for the purposes of con-

sidering Elizabethtown's motion for reargument. First, the Court determined that a genuine issue of material fact existed as to whether an "occurrence," which the insurance policies defined as an accident, caused the damages that the developers sustained. In reaching that decision, the Court explained that an insured can prove that there was an occurrence (accident) by proving the elements for a negligence cause of action. The Court then stated: "Elizabethtown settled its case with the developers on the negligence cause of action.... A settlement termed as negligence does not prove ... a negligence cause of action." Thus, the Court found that a jury must decide whether Elizabethtown was negligent in its dealings with the developers. The Court added that Elizabethtown would have to provide independent proof of its negligence.

Second, the Court found that Hartford's General Exclusion K(3)(b), which provided that Hartford did not have to cover "property damage to ... property that has not been physically injured, arising out of ... failure by any insured ... to perform a contract or agreement in accordance with its terms," barred Elizabethtown's claim for coverage. The Court reasoned that the exclusion applied "because the developers' damages were the lost use of their property ... and because Elizabethtown did not fulfill agreement." The Court explained:

> The Court recognizes that Elizabethtown based its settlement with the developers on an asserted negligence claim, but to permit Elizabethtown to use "negligence" to frustrate the plain and unambiguous language of the exclusion would yield to form rather than substance. The exclusion was intended to cover situations like this one....

## DISCUSSION

### I. Relevant Standard

 Local Civil Rule 7.1(g) provides that the moving party "set forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." "A proper motion to alter or amend judgment must rely on one of three major grounds: (1) an intervening change in controlling law; (2)

the availability of new evidence not available previously; or (3) the need to correct clear error [of law] or prevent manifest injustice." *North River Ins. Co. v. CIGNA Reins. Co.,* 52 F.3d 1194, 1218 (3d Cir.1995). Moreover, the Rule "does not contemplate a Court looking to matters which were not originally presented." *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.,* 680 F.Supp. 159, 162 (D.N.J.1988). Thus, a party "must show more than a disagreement with the court's decision." *Panna v. Firstrust Savings Bank,* 760 F.Supp. 432, 435 (D.N.J.1991). A mere "recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." *Carteret Savings Bank, F.A. v. Shushan,* 721 F.Supp. 705, 709 (D.N.J.1989), *appeal dismissed,* 919 F.2d 225 (3d Cir.1990), *cert. denied,* 506 U.S. 817, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992).

Elizabethtown presents two arguments for why the Court should grant its motion for reargument.

### II. Occurrence v. General Exclusion K(3)(b)

First, Elizabethtown asserts that the Court overlooked its ruling that a jury must decide whether there was an "occurrence" when it decided that the exclusion in Hartford's policy applied. In essence, Elizabethtown contends that if a jury decides that its negligence was an occurrence, then General Exclusion K(3)(b) cannot apply because it did not arise out of any breach of its agreement with the developers. Elizabethtown adds that contrary to the Court's Opinion, it did not argue that its settlement with the developers rendered General Exclusion K(3)(b) inapplicable. Elizabethtown concludes that its basis for coverage was the same throughout its brief—its negligence was an occurrence that required Hartford to provide coverage.

The Court did not overlook its prior ruling on occurrence when it rendered its decisions on "occurrence" and on General Exclusion K(3)(b). First, the Court entertained the issue of negligence as an "occurrence" because the parties hotly debated the issue, because the Court wanted to engage in the academic and theoretical musing associated

with the issue, and because the Court wanted to give the parties and future litigants guidance on a difficult issue.

Second, the rulings are consistent because of the Court's consideration of Elizabethtown's settlement with the developers. In the first ruling, the Court showed that it was reluctant to enforce the settlement on its face. That reluctance arose out of an intuitive belief that Elizabethtown structured the settlement so that it could fall within the purview of its insurance contracts. Thus, the Court stressed that the settlement did not, in and of itself, prove that there was an occurrence. In the second ruling, the Court found that General Exclusion K(b)(3) clearly intended to cover the situation in this case. The Court then stated that relying solely on the settlement would thwart the intent of the insurance policy, and that the Court would not yield to form over substance. Thus, the Court's second ruling rendered the first ruling moot. Indeed, if there was no occurrence then there would be no need to reach the issue presented by General Exclusion K(3)(b). Hence, the latter provision thumps the issue of occurrence and in a sense obviates the need for a trial on the occurrence issue.

Upon reviewing the parties' submissions, the Court is convinced that its prior rulings are correct. The Court found that General Exclusion K(3)(b) applied to this case because Elizabethtown "failed to . . . perform a contract or agreement in accordance with its terms." In reaching that decision, the Court rejected Elizabethtown's argument that its negligence, and not its breach of contract, caused the damages. The Court affirms and reiterates that decision because regardless of what Elizabethtown argues, it failed to fulfill its agreement to provide water, and that failure caused the developers' damages.[1]

## III. Waiver

Elizabethtown's second argument is that Hartford waived its right to rely on General Exclusion K because Hartford did not list the exclusion when it sent Elizabethtown the letter disclaiming coverage in April 1993. Elizabethtown relies on *Continental Insurance Co. v. Beecham,* 836 F.Supp. 1027 (D.N.J. 1993), to support this argument. Elizabethtown concludes that the Court did not address the merits of this argument because it is not mentioned in the Opinion.

The Court did not address this argument because Elizabethtown did not "actually" raise it in its opposition brief and because the Court found the arguments to be irrelevant. Elizabethtown now argues that it mistakenly used "estoppel" instead of "waiver" in footnote two on the thirty-ninth page of its opposition brief. Footnote two states: "Hartford should be estopped from asserting the . . . products liability exclusion here because i[t] never formally disclaimed coverage on [that] ground[ ] but only raised [that] exclusion[ ] in their June 4, 1997[,] more specific answers to Elizabethtown's interrogatories." Eliz.Br. at 39 n. 2 (citing *Beecham,* 836 F.Supp. 1027). Elizabethtown now contends that the import of its argument was that Hartford waived the right to use the exclusion in a motion for summary judgment because it failed to raise the exclusion in their letter disclaiming coverage.

As stated *supra,* the Court generally refuses to hear new arguments on a motion for reargument. In this case, Elizabethtown's waiver argument is very close to a new argument. In its initial brief, Elizabethtown placed its "estoppel" argument in a one-sentence footnote on the thirty-ninth page. In its motion for reargument, Elizabethtown expanded its waiver argument to one and one-quarter pages in its moving brief and two single-spaced pages in its reply brief. If Elizabethtown wanted to rely on the waiver argument, it should have made the argument more prominent in its opposition brief so that defendants would have had the opportunity to address it.

That being said, the Court will address the argument because "technically" Elizabethtown raised it and because the Court accepts

---

1. The Court notes that Elizabethtown's argument that its expert's opinion that General Exclusion K does not apply does not alter the Court's analysis. In applying General Exclusion K, the Court found that the exclusion was clear and unambiguous. That finding rendered Elizabethtown's expert's opinion meaningless.

Elizabethtown's concession that it confused the terms estoppel and waiver. The Court notes, however, that other Courts might not be so lenient, and that Elizabethtown should be more cautious when designing and writing its briefs.

■ Waiver involves the intentional relinquishment of a known right. *See Shebar v. Sanyo Bus. Sys. Corp.*, 111 N.J. 276, 291, 544 A.2d 377 (1988). To prove waiver, a party must show that the other party knew of its rights and deliberately intended to relinquish them. *See id.* "Questions of waiver, therefore, are usually questions of intent, which are factual determinations that should not be made on a motion for summary judgment." *Id.* Elizabethtown argues that Hartford must be deemed to know the provisions in its policies, and that its failure to raise the exclusion after a two-month investigation into Elizabethtown's claim "constitutes a deliberate intention to relinquish or abandon those defenses and/or exclusions."

The general rule, however, does not apply to this case because Hartford did not waive its right to raise General Exclusion K(3)(b). A brief review of the procedural history is necessary for a complete understanding of the issue. In September 1991, the developers filed the case that ultimately gave rise to this action. In or about the middle of June 1993, Elizabethtown informed defendants of its claim for coverage. On July 1, 1993, Elizabethtown forwarded its case file on the underlying action to Hartford. On August 9, 1993, Hartford wrote Elizabethtown a letter stating that it was going to investigate the case and was reserving its rights under the policy. An internal memorandum written during the investigation mentioned General Exclusion K(b)(3):

> If by some chance, it was determined that there was an allegation of an occurrence in this complaint, our policy still probably includes an exclusion for ... property that has not been physically injured, arising out of a delay or failure by the insured ... to perform a contract or agreement in accordance with contract terms.[2]

On August 31, 1993, Hartford informed Elizabethtown that it would not cover the losses because it did not believe that there was an occurrence or property damage as defined in the insurance policy. Thus, it appears as though Hartford did not rely on or discuss any of its exclusions because of its belief that the liability provisions did not provide coverage.

In November 1994, Elizabethtown settled the underlying action with the developers. In July 1995, Elizabethtown filed its Complaint in this Court. In or around March 1996, defendants moved for partial summary judgment on the Third Count of Elizabethtown's Complaint, which stated a claim for "bad faith refusal to defend and indemnify ." In its reply brief dated March 14, 1996, Hartford discussed its reasons for disclaiming coverage. In addition to the reasons stated in its letter of August 1993, Hartford addressed the exclusions. As for General Exclusion K(3)(b), Hartford stated:

> Frankly, it is very difficult to see how the plaintiff will escape the effect of this particular exclusion. The exclusion seems to clearly apply in this particular case. Nevertheless, for the purposes of this motion, it is only necessary to cite this particular exclusion for the purpose of demonstrating once again that there were sound reasons for the denial of coverage on behalf of [ ] Hartford.

The Court granted defendants motion for partial summary judgment in September 1996.

■ The Court holds that Hartford did not waive its right to rely on General Exclusion K(b)(3) for the following five reasons. First, Elizabethtown has not shown that Hartford considered the exclusion and deliberately decided not to rely on it. After two years of discovery, Elizabethtown has not produced any direct proof that Hartford waived its right. In fact, Elizabethtown's decision to place its waiver argument in a footnote near the end of its opposition brief indicates that it did not strongly believe or place much confidence in the waiver argument.

2. The memorandum also lists other exclusions that may apply to Elizabethtown's claim.

Second, Elizabethtown's attempt to show waiver through an inference is unpersuasive. Even if Elizabethtown is correct that Hartford is presumed to know the provisions in its policies, Elizabethtown has not shown that Hartford deliberately intended to relinquish its right to rely on General Exclusion K(b)(3) when it wrote the letter disclaiming coverage. Rather, the letter indicates that Hartford did not think it was necessary to discuss the exclusions in its letter disclaiming coverage because its position was that the liability provisions did not cover the damages to the developers. Furthermore, Hartford's internal memorandum shows that it knew about General Exclusion K(b)(3), but that it would not rely on the exclusion unless a court determined that there was an occurrence. Thus, in light of these factors, the Court does not accept the inference that Elizabethtown has suggested.

Third, Elizabethtown's reliance on *Beecham* is misplaced because in that case, Judge Barry found that an insurer could not invoke exclusions for the first time in a motion for summary judgment after discovery had been completed. 836 F.Supp. at 1045. Moreover, in *Beecham,* the insurer had stated its grounds for disclaiming coverage when it filed its declaratory judgment action to determine whether there was coverage. *Id.* In this case, Hartford informed Elizabethtown of General Exclusion K(b)(3) approximately two years before it filed its motion for summary judgment. Therefore, Hartford did not surprise Elizabethtown, and gave Elizabethtown ample notice to prepare proofs and arguments why the exclusion did not apply.

Fourth, Hartford's failure to list General Exclusion K(b)(3) in its initial letter disclaiming coverage does not mean that it is permanently barred from claiming that that exclusion prohibits coverage. The Court refuses to adopt the view that a delay in raising an exclusion is equal to a waiver. As shown in *Beecham,* courts will allow insurers to raise exclusions during litigation if they give insureds ample time to prepare arguments and to obtain discovery on why the exclusion should not apply.

Fifth, the fact that Hartford did not inform Elizabethtown of its intention to rely on the exclusion from August 1993 to March 1996 is not dispositive because Elizabethtown defended itself in the underlying action and did not file suit against Hartford for approximately two years after Hartford had written its letter disclaiming coverage. In any event, the notice in March 1996 provided Elizabethtown with sufficient time to prepare an attack on General Exclusion K(b)(3).

## CONCLUSION

For the reasons stated *supra,* the Court will deny Elizabethtown's motion for reargument.

An appropriate Order is attached.

## *ORDER*

In accordance with the Court's Opinion filed herewith,

It is on this 29th day of May, 1998

ORDERED that plaintiff Elizabethtown Water Company's motion for reargument of this Court's Opinion and Order dated March 27, 1998 is denied.