904 A.2d 754 (2006)
387 N.J. Super. 434
FIREMEN'S INSURANCE COMPANY OF NEWARK and the Continental Insurance Company, Plaintiffs-Respondents/Cross-Respondents,
v.
NATIONAL UNION FIRE INSURANCE COMPANY; American Casualty Company of Reading, PA; The Home Indemnity Company; State Farm Fire and Casualty; International Insurance Company; Society Hill Associates; AMS Associates, Inc.; Stein Built Homes, Inc.; Arthur M. Stein; David M. Stein; Albert L. Stein; Joseph Alber; and June Baldwin, Defendants, and
Society Hill Condominium Association, Inc., Defendant-Appellant, and
The Home Insurance Company, Defendant-Respondent/Cross-Appellant, and
Crum and Forster Insurance Company and the North River Insurance Company, Defendants-Respondents/Cross-Respondents, and
Home Owners Warranty Corporation; How Insurance Company; and Continental Casualty Company, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted May 2, 2006.
Decided August 16, 2006.
*755 Wolf & Booth, attorneys for appellant Society Hill Condominium Association (Matthew S. Wolf, of counsel and on the brief).
Margolis Edelstein, attorneys for cross/ appellant New Jersey Property Liability Insurance Guaranty Association (Peter S. Cuddihy, Westmont, on the brief).
Landman, Corsi Ballaine & Ford, attorneys for respondents North River Insurance Company and Crum and Forster Insurance Company (Gerald T. Ford and Natalie Garcia, Newark, on the brief).
Sander, Hannye & Carson, attorneys for respondents Home Owners Warranty Corporation and How Insurance Company (Mark R. Sander, Bala Cynwyd, on the brief).
Parker, McCay & Criscuolo, attorneys for respondents Firemen's Fund Insurance Company (Stacy L. Moore, Jr., of counsel; Elena B. Zuares, Marlton, on the brief).
Connell Foley, attorneys for respondent Continental Casualty Company (Ernest W. Schoellkopff, Roseland, of counsel and on the brief).
Before Judges COBURN, COLLESTER and S.L. REISNER.
The opinion of the court was delivered by
COLLESTER, J.A.D.
This is an insurance coverage case, stemming from a lawsuit by the Society Hill Condominium Association, Inc. against various defendants for defects in construction of the condominiums. The Association recovered a substantial judgment against several defendants in the underlying construction defect litigation. But in the related insurance coverage action, which gave rise to this appeal, the trial judge held that the defendants' various commercial general liability policies did not require the insurers to indemnify the defendants for the claims at issue here. *756 The essence of the trial judge's decision is that faulty workmanship, in itself, does not constitute "property damage" or an "occurrence" within the meaning of the applicable insurance policies. We affirm the judge's coverage decision, and also affirm his allocation of legal expenses among the insurers.

I.
Society Hill Condominiums located in Cherry Hill is comprised of 375 dwelling units within forty-three buildings. Construction of the Society Hill Condominiums occurred over a period of approximately eight years between 1978 and 1986. Society Hill Associates was the developer on the project. AMS Associates served as general contractor during the construction. In 1985, Stein Built Homes, Inc. merged with AMS Associates, Inc. and took over as the general contractor on the construction. All construction work at Society Hill was performed by subcontractors retained by AMS Associates, and Stein Built Homes.
On October 16, 1989, Society Hill Condominium Association (Society Hill) instituted suit against Society Hill Associates, AMS Associates, Inc., Stein Built Homes, Inc., Arthur M. Stein, David M. Stein, Albert L. Stein, Joseph Albert and June Baldwin (Stein defendants). The claims advanced against the Stein defendants alleged breach of express warranty, breach of implied warranty, negligent design and construction, negligent supervision of subcontractors, failure to inform, investigate and correct defects, negligent failure to establish a proper operating reserve budget, misrepresentation of funding and inadequacy of budgets, misrepresentation of budget regulation statement in violation of N.J.S.A. 45:22A-37, violations of the Consumer Fraud Act, and negligence of Mark S. Taconita and Triad Associates. All of the alleged defective work was performed by subcontractors.
Firemen's Insurance Company of Newark, New Jersey and Continental Insurance Company of New Jersey (Firemen's) undertook the defense of the Stein defendants. On August 23, 1991, Firemen's filed a complaint for declaratory judgment, naming as defendants, the Home Insurance Company, the Home Indemnity Company (The Home), North River Insurance Company, Crum & Forster Insurance (C & F) and various other insurers who had issued policies to the Stein defendants over the course of the years of construction, 1978 through 1991. In January 1996, Firemen's moved for summary judgment seeking a defense and indemnification against all of the insurer defendants named in the declaratory judgment action. Society Hill, who was also named as a defendant in the declaratory judgment action, filed a cross-motion seeking a defense and indemnification for the Stein defendants under the carrier policies of insureds. The carriers opposed both motions. Judge Charles A. Little found there was coverage for the Stein defendants, without respect to the work of their subcontractors. Accordingly, C & F, The Home and Firemen's were required to defend the Stein defendants in the underlying litigation.
The liability trial in the underlying action, took place before Judge John B. Fratto. Judge Fratto dismissed several counts of the complaint and made a factual determination as to defects listed by plaintiff's expert, dismissing certain claims against the Stein defendants and holding them liable for seven specific construction defects.
Subsequent to the decision of Judge Fratto in the liability trial, motions for summary judgment were filed by C & F, The Home and Firemen's in the declaratory *757 judgment action, seeking an order declaring that they did not have a duty to indemnify the Stein defendants for the damages that might be assessed against the Stein defendants in the underlying action with respect to the seven construction defects identified by the court in the liability trial. The insurance carriers argued that the policies did not provide coverage for faulty workmanship, that the claims against the insured defendants were not claims for property damage and that there was no "occurrence" which would trigger coverage under the insurance policies.
Judge Fratto granted all the insurance carriers' motions ruling that there was no duty to indemnify the Stein defendants. Judge Fratto accepted the insurance carriers' arguments that there was not property damage which would trigger coverage. He also found that the condominium buildings were the product of the insured so as to trigger the insured product exclusion.
The damages trial in the underlying action resulted in a finding by the jury for plaintiffs on the seven claims and an award of $600,000. Pre-judgment interest in the amount of $336,000 was also awarded.
Society Hill appealed from the adverse rulings of Judge Fratto's 1998 liability judgment and the Stein defendants cross-appealed. We affirmed. Society Hill Condo. Ass'n v. Society Hill Associates, 347 N.J.Super. 163, 175, 789 A.2d 138 (App.Div.2002).
As a result of summary judgment granted to the insurance carriers on grounds that none of the insurers provided coverage for the seven items of defective construction, no insurance coverage was available for any policy to satisfy the judgment against the Stein defendants. Therefore, Society Hill has appealed from the orders for summary judgment granted to the carriers. The cross-appeal relates to that portion of Judge Fratto's judgment dealing with Firemen's application for allocation of legal expenses as follows: North River/C & Fthirty-eight percent; Homethirty-one percent; Firemen's thirty one percent. We affirm the final judgment in its entirety.

II.
The three primary carriers provided CGL/umbrella coverage to the Stein defendants during different periods over the range of years of liability: North River1978-1983; Firemen's1983-1987; and Home1987-1991.
All of the insurers issued policies that contained the standard provisions of the 1973 version issued by the Insurance Services Office (ISO) including the following:
1. The insuring clauses

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . property damage. . . to which this insurance applies, caused by an occurrence . . . . (emphasis added.)
"Property damage" is defined as
[P]hysical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.
"Occurrence" is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."
2. The exclusions

*758 (1) The "insured's products" exclusion, which excludes coverage for "property damage to the named insured's products arising out of such products or any part of such products"; and (2) the "work performed" exclusion, which denies coverage with respect to the completed operations hazard and with respect to any classification stated in the policy or in the company's manual as "including completed operations," to property damage to work performed by the named insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith. (emphasis added.)
Society Hill contends that the trial court erred in denying the Stein defendants' position in the coverage action that their insurers must indemnify the award of damages against them and in favor of the association[1] because the cost of repairing the defective workmanship fell within the coverage clauses of the policies and none of the policy exclusions applied. Clearly, if there was no coverage under the insuring clauses, there is no need to consider whether coverage is negated by the exclusions. See Morton Int'l v. General Acc. Ins. Co., 134 N.J. 1, 88, 629 A.2d 831 (1993) (after a finding of no "occurrence" under the coverage clause, there was no need to address the potential exclusions), cert. denied, 512 U.S. 1245, 114 S.Ct. 2764, 129 L.Ed.2d 878, rehearing denied, 512 U.S. 1277, 115 S.Ct. 25, 129 L.Ed.2d 923 (1994). Judge Fratto went further by concluding the insuring clauses did not provide coverage and, even if there was, pertinent policy exclusions negated coverage.
The seminal case regarding insurance coverage for a contractor's defective work is Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 405 A.2d 788 (1979). In that case the defendant-masonry contractor was insured under a general liability policy that contained the then-standard CGL coverage clause, by which the insurer agreed to pay sums that the insured is "legally obligated to pay as damages because of . . . bodily injury . . . or property damage to which this insurance applies, caused by an occurrence." Id. at 237, 405 A.2d 788. The policy also contained two relevant exclusions also present in the policies sub judice, for: (1) property damages to the "insured's products arising out of such products or any part of such products"; and (2) "property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith." Id. at 241, 405 A.2d 788. The issue was whether the CGL policy "indemnifies the insured against damages in an action for breach of contract and faulty workmanship on a project, where the damages claimed are the cost of correcting the work itself." Id. at 235, 405 A.2d 788. The Court answered no, holding that either or both of the pertinent exclusions, which it referred to as "business risk" exclusions, defeated coverage. Id. at 241-45, 405 A.2d 788.
The Court explained that an insured contractor is exposed to two kinds of risks, one of which is excluded by the standard CGL policy and one of which is not. The non-covered risk is "business risk," that is, the risk that the contractor's work may be faulty and may breach express or implied warranties. The Court reasoned that the contractor retains control over the quality of its own work and so should be expected to bear the cost of curing its own deficient performance:

*759 The insured-contractor can take pains to control the quality of the goods and services supplied. At the same time he undertakes the risk that he may fail in this endeavor and thereby incur contractual liability whether express or implied. The consequence of not performing well is part of every business venture; the replacement or repair of faulty goods and works is a business expense, to be borne by the insured-contractor in order to satisfy customers.
[Id. at 239, 405 A.2d 788.]
The other kind of risk which is intended to be covered, is "the risk of injury to people and damage to property caused by faulty workmanship." Ibid.
Unlike business risks . . . where the tradesman commonly absorbs the cost attendant upon the repair of his faulty work, the accidental injury to property or persons substantially caused by his unworkmanlike performance exposes the contractor to almost limitless liabilities. While it may be true that the same neglectful craftsmanship can be the cause of both a business expense of repair and a loss represented by damage to persons and property, the two consequences are vastly different in relation to sharing the cost of such risks as a matter of insurance underwriting.
[Id. at 239-40, 405 A.2d 788.]
In other words, the key distinction is the predictability of the harm: damage for breach of contractual warranty is limited and is an expected cost of doing business; liability for injury or damage to a person or property is potentially "almost limitless" and is "entirely unpredictable." Ibid. The policy is intended to insure against the latter risk. As concisely stated, "the policy in question does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident." Id. at 249, 405 A.2d 788.
While Weedo addressed "business risk" in the context of whether certain exclusions applied, the Weedo principle has been extended to the threshold issue of whether the risk was within the scope of the standard insuring clause. In Newark Ins. Co. v. Acupac Packaging Inc., 328 N.J.Super. 385, 746 A.2d 47 (App.Div. 2000), the issue was whether the insurance policy covered damage caused by leaky paquettes of lotion that had been attached to advertising cards as part of a cosmetic company's promotion. We first considered whether such damage was covered by the insuring clause and adopted the Weedo distinction:
There is a critical distinction between insurance coverage for tort liability for physical damages to other persons or property, and protection from contractual liability of the insured for economic loss caused by improper workmanship. Ordinarily, the coverage is for tort liability for physical damage to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.
[Id. at 391, 746 A.2d 47.]
In Hartford Ins. Group v. Marson Constr. Corp., 186 N.J.Super. 253, 258-59, 452 A.2d 473 (App.Div.1982), certif. denied, 93 N.J. 247, 460 A.2d 656 (1983), and Aetna Cas. & Sur. v. Ply Gem Indus., Inc., 343 N.J.Super. 430, 446-50, 778 A.2d 1132 (App.Div.), certif. denied, 170 N.J. 390, 788 A.2d 774 (2001), we applied the Weedo test and held that the insurer was bound to defend against claims that the contractor's defective work caused damage to other property. Similarly in Heldor Inds. v. Atlantic Mut. Ins. Co., 229 N.J.Super. 390, 551 A.2d 1001 (App.Div.1988), we followed Weedo and stated that the CGL policy covers tort liability for physical damage to *760 others, not contractual liability of the insured for economic losses resulting from breaches of its duty to perform as bargained. Accordingly, "the insured assumes the risk of necessary replacement or repair of faulty goods as part of the cost of doing business, but passes on to the insurance carrier the risk of personal injury or damage to property of third parties caused by the faulty goods." Id. at 396, 551 A.2d 1001.
In the instant case, Judge Fratto applied the Weedo principle and ruled that, under the 1973 ISO's insuring clause, there was neither "property damage" nor an "occurrence." He stated that there was no "property damage" because that concept "is generally not inclusive of inferior material or poor workmanship," relying on a California case, Maryland Casualty Co. v. Reeder, 221 Cal.App.3d 961, 270 Cal. Rptr. 719 (1990), review denied, 1990 Cal. LEXIS 4366 (Cal. Sept. 19, 1990), with facts similar to the case at bar. There a condominium association sued the general contractor who built the complex, alleging faulty workmanship had caused water damage to walls, ceilings, roofs, foundations, and contents of the units. The issue was whether the contractor's insurer was bound to defend and indemnify under a CGL policy containing the standard coverage clause for property damage caused by an "occurrence." The court applied the Weedo-type distinction between repairing defective work and repairing damage caused by that defective work:
Generally liability policies, such as the ones in dispute here, are not designed to provide contractors and developers with coverage against claims their work is inferior or defective. The risk of replacing and repairing defective materials or poor workmanship has generally been considered a commercial risk which is not passed on to the liability insurer. Rather liability coverage comes into play when the insured's defective materials or work cause injury to property other than the insured's own work or products.
[Id. at 722 (citations omitted).]

III.
Society Hill first contests Judge Fratto's finding of no "property damage" by citing Newark for the "incorporation doctrine," which holds that "property damage" for CGL purposes can result when defective materials or workmanship have been incorporated into the property of others. Newark, supra, 328 N.J.Super. at 399-400, 746 A.2d 47.
However, in Newark the defective product did cause damage to other property, that is, the alleged harm was not limited to the cost of curing the defects. However, in this case the alleged damage was the cost of replacing sub-standard firewalls. The complaint did not allege that the firewalls caused damage to the rest of the building or to any other person or property. Therefore, Newark is distinguishable. Moreover, our courts have stressed that actual physical damage is required, not just economic loss or diminution, as a result of the faulty work. See Weedo, supra, 81 N.J. at 243 n. 4, 405 A.2d 788 (specifically disapproving the line of cases holding that mere presence of a defective component can qualify as property damage); Heldor, supra, 229 N.J.Super. at 398 n. 3, 551 A.2d 1001 (impliedly adopting the Weedo Court's rejection of the same case law). See also New Hampshire Ins. Co. v. Vieira, 930 F.2d 696, 698-701 (9th Cir. 1991) (construing the incorporation doctrine as applying only when the incorporated work causes actual damage to other parts of the property).
However, Society Hill argues it should prevail under the principle that *761 "property damage" to someone else's property is not limited to the cost of repairing faulty workmanship, because the work was done by subcontractors, and because the subcontractors' work damaged the property of others, namely, Society Hill and the Stein defendants.
However, Society Hill cites no case law or other authority supporting its premise that, when the work is performed by subcontractors as opposed to the insured general contractor, the normal rule of non-coverage does not apply. In fact, cases that have considered the issue equate subcontractors with general contractors for the purposes of determining whether there was "property damage" under the 1973 ISO policy.
In Knutson Constr. Co. v. St. Paul Fire and Marine Ins. Co., 396 N.W.2d 229 (Minn.1986), the defective work was performed by subcontractors of the insured general contractor. The Minnesota court considered the argument made by Society Hill in this case under the Broad Form Property Damage (BFPD) endorsement. This exclusion barred coverage only for work performed by the insured, and the plaintiff contended that, therefore, the implication is an insured is covered for faulty work done by its subcontractors. However, the Knutson court rejected the attempt to determine coverage based on separating a general contractor from its subcontractors:
When the completed project is turned over to the owner by the general contractor, all of the work performed and materials furnished by subcontractors merges into the general contractor's producta product it has contracted to complete in a good workmanlike manner. Thereby it incurred the business risk of liability arising from its failure to fulfill that contractual obligation. Thus, whether the work was "done by" or "on behalf of" the general contractor is irrelevant to the analysis. The completed product is to be viewed as a whole, not as a "grouping" of component parts. The CGL policy excludes damage to the product for the exact public policy reasons hereinbefore discussed. Slight difference in wording in the work performed exclusion in the BFPD endorsement does not affect this exclusion.
[Id. at 236-37.]
In Blaylock & Brown Constr., Inc. v. AIU Ins. Co., 796 S.W.2d 146, 152-53 (Tenn.Ct.App.1990), the court also considered the issue as to when the BFPD endorsement required coverage because the work was done by a subcontractor. Adopting the Knutson court's rationale, the Tennessee court ruled that the fact of a subcontractor's involvement did not resurrect coverage under the BFPD's "work performed" exclusion.
[T]he named insured is the general contractor and work performed by the insured must necessarily be such work as the named insured is required to perform under the construction contract. How the insured performs the work is a matter for its decision in the exercise of sound business practice. The contractor can employ subcontractors or use employees to do the work, but in the end, when the work is completed, all the work called for by the contract on the part of the contractor must be deemed to be work performed by the contractor. We hold that the language of the policy excludes liability coverage for the plaintiffs for damage to the property constructed pursuant to the contract.
[Id. at 154.]
Accord Ryan Homes, Inc. v. Home Indem. Co., 436 Pa.Super. 342, 647 A.2d 939, 942-44 (1994), app. denied, 540 Pa. 621, 657 A.2d 491 (Pa.1995).
*762 We concur with Judge Fratto's determination that there was no "property damage" to effectuate coverage.

IV.
Society Hill next contends that the subcontractors' work qualified as an "occurrence" within the meaning of the 1973 ISO's coverage clause. We need not decide the issue of whether there was an "occurrence" because the insuring clause covers liability for "property damage" if that damage was "caused by an occurrence." Coverage requires that both elements, property damage and occurrence, be satisfied.
However, even considering "occurrence" alone, Society Hill's argument lacks merit. The 1973 ISO defined "occurrence" as "an accident . . . which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." While it could be argued that the "neither expected nor intended" part of the definition was met, the requirement of consequences as "property damage" was not.
Society Hill argues that "most courts have held that negligent workmanship by a contractor is an `occurrence'." On the contrary, the majority rule is that faulty workmanship does not constitute an "occurrence." See, e.g., L-J, Inc. v. Bituminous Fire & Marine Ins. Co., 366 S.C. 117, 621 S.E.2d 33, 35 (2005). The cases cited by Society Hill are distinguishable. Green Constr. Co. v. National Union Fire Ins., 771 F.Supp. 1000 (W.D.Mo.1991), was subsequently vacated by the same court, with the direction that the vacated opinion "should not be relied upon for the propositions of law stated therein." 975 F.Supp. 1365, 1366 (W.D.Mo.1996). In Maryland Casualty Co., supra, 270 Cal.Rptr. 719, that opinion did not purport to analyze the "occurrence" element of the insuring clause, but rested on the "property damage" element, ruling that there was "property damage" when the contractor's defective work caused physical damage to other parts of the property being worked on. However, Maryland Casualty is factually distinguishable since Society Hill did not allege that the faulty workmanship caused damage to existing buildings.
In Ohio Casualty Ins. Co. v. Terrace Enterprises, Inc., 260 N.W.2d 450, 452-53 (Minn.1977), rehearing den. (Minn.1978), a general contractor's failure to properly protect the soil and concrete from the cold caused a building to threaten to collapse, necessitating replacement of the foundation. The court held that, because the harm was not intentional but was the result of the contractor's negligence, it was an "occurrence." Ibid. However, unlike the case at bar, it was undisputed that there had been "property damage" to other real property caused by the work performed by the contractor. Society Hill also cites Brosnahan Builders, Inc. v. Harleysville Mutual Ins. Co., 137 F.Supp.2d 517 (D.Del.2001), aff'd, 2003 WL 146486 (3d Cir. Jan. 21, 2003), cert. denied, 540 U.S. 820, 124 S.Ct. 103, 157 L.Ed.2d 38 (2003), but in that case the court ruled that there was no "occurrence," because the defective work was not an accident but was done intentionally or recklessly. 137 F.Supp.2d at 526.
In L-J, Inc., supra, the South Carolina Supreme Court adopted the view of the "majority of other jurisdictions . . . that faulty workmanship standing alone, resulting in damage only to the work product itself, does not constitute an occurrence under a CGL policy." 621 S.E.2d at 35. The court explained the policy basis for denying insurance coverage for such claims:
If we were to hold otherwise, the CGL policy would be more like a performance *763 bond, which guarantees the work, rather than like an insurance policy, which is intended to insure against accidents. A performance bond guarantees that the work will be performed according to the specifications of the contract by providing a surety to stand in the place of the contractor should the contractor be unable to perform as required under the contract. Consequently, our holding today ensures that ultimate liability falls to the one who performed the negligent workthe subcontractorinstead of the insurance carrier. It will also encourage contractors to choose their subcontractors more carefully instead of having to seek indemnification from the subcontractors after their work fails to meet the requirements of the contract.
[621 S.E.2d at 35 (citation omitted).]
See also Pursell Constr. v. Hawkeye-Security Ins., 596 N.W.2d 67, 71 (Iowa 1999) ("We agree with the majority rule and now join those jurisdictions that hold that defective workmanship standing alone, that is, resulting in damages only to the work product itself, is not an occurrence under a CGL policy").
In sum, we agree with the decision of Judge Fratto that there was no coverage because Society Hill could not meet the standard of "property damage" or "occurrence" in the policies.

V.
In its cross-appeal PLIGA (successor to Home) challenges Judge Little's June 5, 2001, order allocating the legal expenses among the three primary carriers, Firemen's, Home, and North River contending that (1) the judge erred in not calculating the three shares by considering the availability of excess policies as well as primary; (2) the judge erred in allocating the defense costs without first apportioning those costs between covered and non-covered claims; and (3) the judge failed to determine the reasonableness of the fees charged by Firemen's attorneys.
After careful consideration of the record and the briefs of counsel, we affirm Judge Little's allocation of legal expenses only among the three primary carriers. The argument to include the excess policies fails because there is no showing that any of those policies were triggered and none of the excess carriers are responsible for the judgment. See Owens-Illinois, Inc. v. United Ins. Co., 138 N.J. 437, 650 A.2d 974 (1994); Carter-Wallace Inc. v. Admiral Ins. Co., 154 N.J. 312, 327, 712 A.2d 1116 (1998); Chemical Leaman Tank v. Aetna Cas. & Sur. Co., 978 F.Supp. 589 (D.N.J.1997), rev'd on other grounds, 177 F.3d 210 (3d Cir.1999). Therefore, it is reasonable to conclude that the primary insurers whose policy limits are sufficient should satisfy the judgment. As to the apportionment between covered and non-covered claims, this argument was not raised below, and we therefore decline to consider it. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973).
Finally, as to the claim that the legal expenses were excessive, Judge Little reduced some of the claimed expenses by adopting a twenty percent downward adjustment. We find no merit in the argument for further reduction.
Affirmed.
NOTES
[1] No one contests appellant-association's standing in seeking a reversal of the ruling against the Stein defendants on the coverage issue.