OPINION OF THE COURT
Saxe, J.
This declaratory judgment action involving insurance coverage arises out of an underlying action brought by a building owner against its contractors after a piece of the exterior wall of its 42-story office building under construction in Jersey City fell to the street from the eighth-story level.
*105 Defendant GSJC 30 Hudson Urban Renewal, LLC (GSJC) is the owner of the Jersey City property. GSJC retained defendant Turner Construction Company to serve as general contractor for a construction project on the property, and Turner subcontracted with defendant Permasteelisa North America Corporation to design and build the exterior wall, known as the “curtain wall,” which consisted of granite and glass, with an attached network of decorative horizontal and vertical pipe rails.
On January 25, 2010, a segment of the pipe rail system fell to the street from the eighth floor of the building. The outside consultant hired by GSJC to investigate and inspect the curtain wall determined that more than 20% of the pipe rail connections surveyed did not conform to the building plans. It reported additional problems: inconsistencies in the method of rail attachment; loose shear block connections; missing, sheared, or otherwise variably-sized screws; cracked or deformed shear block screw chases; an inability of some rails to accommodate thermal and building movements; bent brackets on the pipe rail system; cracked glass louvers; cracked glass panels; and water infiltration.
GSJC sued Turner and Permasteelisa in New Jersey Superior Court for breach of contract, breach of warranty, and negligence, based on allegations of “defects in the design, fabrication and/or installation of components of the Pipe-Rail Network,” which was responsible for the damage to the building fagade and the continuing danger that the remainder of the pipe rail system would fall to the street.
The project was insured by plaintiff, National Union Fire Insurance Company of Pittsburgh, Pa., through an owner controlled insurance program (OCIP), under which the construction project owner procures insurance on behalf of all parties performing work on the project or site. The insurance covered the owner, GSJC, the general contractor, Turner, and onsite project subcontractors, including Permasteelisa. Under the OCIR National Union issued commercial general liability insurance policies and an umbrella policy (referred to hereafter collectively as the policy).
The policy, as amended by an endorsement, defines “[ojccurrence” as “an accident, event, or happening, including continuous or repeated exposure to substantially the same general harmful conditions.” The policy contains various exclusions, including one for professional services, also known as a professional liability exclusion.
*106 Turner and Permasteelisa tendered notice of the underlying action to National Union, which agreed to provide a defense, subject to a reservation of rights, based on several policy provisions that could preclude or limit insurance coverage, including the fact that the policy provides coverage only for property damage caused by an “occurrence” and that the claim of defective design and workmanship does not constitute “property damage.”
National Union commenced this action for a judgment declaring that the policy did not cover the underlying claims against Turner and Permasteelisa, and for reimbursement of defense costs paid on Turner’s and Permasteelisa’s behalf. It then moved for summary judgment declaring that there was no coverage as a matter of law, because (1) GSJC’s claims did not constitute “property damage” or an “occurrence” within the meaning of the policy; (2) the CGL policy did not cover the claims for breach of contract, breach of warranty, or breach of fiduciary duty; (3) Turner and Permasteelisa had breached the notice provision of the policy; and (4) there was no coverage for defective design-related claims because of the professional liability exclusion.
In opposition, Permasteelisa and Turner argued that the parties had negotiated an “expanded” version of the definition of “occurrence,” and that, based on dictionary definitions of the terms “event” and “happening,” the subject loss should be covered.
The motion court held that the policy did not cover GSJC’s claims against Turner and Permasteelisa, granted the requested declaration, and directed that National Union be reimbursed the costs and fees it paid for its defense of Turner and Permasteelisa in the underlying action.
Discussion
Initially, it is undisputed that the law of New Jersey governs this action, which turns on insurance policy interpretation, and that New Jersey and New York law are consistent as to the issues in dispute here.
Under both New York and New Jersey law, construction defects such as those asserted in the underlying action — faulty design, fabrication or installation — do not constitute “occurrences” under a commercial general liability insurance policy (see Firemen’s Ins. Co. of Newark v National Union Fire Ins. Co., 387 NJ Super 434, 445, 904 A2d 754, 760 [App Div 2006]; George A. Fuller Co. v United States Fid. & Guar. Co., 200 AD2d *107 255, 260-261 [1st Dept 1994], lv denied 84 NY2d 806 [1994]). The general rule is that a commercial general liability insurance policy does not afford coverage for breach of contract, breach of fiduciary duty, or breach of warranty, but rather for bodily injury and property damage (see Grand Cove II Condominium Assn., Inc. v Ginsberg, 291 NJ Super 58, 72, 676 A2d 1123, 1130 [App Div 1996]; Fuller, 200 AD2d at 259-260).
Under New Jersey law, commercial liability insurance does not provide coverage for faulty workmanship that results in damage to the insured’s work; a commercial general liability policy “does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident” (Weedo v Stone-E-Brick, Inc., 81 NJ 233, 249, 405 A2d 788, 796 [1979]). “While Weedo addressed ‘business risk’ in the context of whether certain exclusions applied, the Weedo principle has been extended to the threshold issue of whether the risk was within the scope of the standard insuring clause” (Firemen’s Ins. Co., 387 NJ Super at 443, 904 A2d at 759).
There is no “occurrence” under a commercial general liability policy where faulty construction only damages the insured’s own work (see Pennsylvania Gen. Ins. Co. v Menk Corp., 2011 WL 5864109, *4-5, 2011 US Dist LEXIS 134086, *10-17 [D NJ Nov. 21, 2011]), and faulty workmanship by subcontractors hired by the insured does not constitute covered property damage caused by an “occurrence” for purposes of coverage under commercial liability insurance policies issued to the general contractor, since the entire project is the general contractor’s work (see Firemen’s Ins. Co., 387 NJ Super at 446, 449, 904 A2d at 760-761, 762-763). In Baker Residential Ltd. Partnership v Travelers Ins. Co. (10 AD3d 586, 587 [1st Dept 2004]), where developers delivered and installed defective structural beams that deteriorated from water penetration due to improper installation, flashing and waterproofing, this Court held that the damages sought by the developers did not arise from an “occurrence” resulting in damage to third-party property distinct from the developers’ own “work product.” And in Direct Travel v Aetna Cas. & Sur. Co., 214 AD2d 484, 485 [1st Dept 1995]), this Court explained that “[s]ince the claims asserted in the underlying action were for economic loss resulting from the plaintiffs purported breach of contract, coverage was also properly disclaimed under the umbrella policy which covered only ‘damages because of “bodily injury” [or] “property damage” . . . [c]aused by an “occurrence” ’ ” (see also Pavarini Constr. Co. v Continental Ins. Co., 304 AD2d 501, 502 [1st Dept 2003]).
*108 Despite the foregoing settled case law, Turner and Permasteelisa argue that with the expansion of the definition of “occurrence” to include “an accident, event, or happening,” the policy covers GSJC’s claims against them, or, at least, that the amended definition of “occurrence” in the policy is ambiguous. We disagree, and hold that the motion court was correct in concluding that the negotiated amendment of the definition of “occurrence” in the subject commercial liability policies to include the words “event, or happening” along with the word “accident” did not expand the definition so as to encompass faulty workmanship.
“[T]he requirement of a fortuitous loss is a necessary element of insurance policies based on either an ‘accident’ or ‘occurrence’ ” (Consolidated Edison Co. of N.Y. v Allstate Ins. Co., 98 NY2d 208, 220 [2002]; Insurance Law § 1101 [a] [1]; see also Victory Peach Group, Inc. v Greater N.Y. Mut. Ins. Co., 310 NJ Super 82, 87, 707 A2d 1383, 1385 [1998]). As the motion court recognized, the addition of “event” or “happening” to the definition of “occurrence” did not alter the legal requirement that the “occurrence” triggering the coverage must be fortuitous. “[A] claim for faulty workmanship, in and of itself, is not an occurrence under a commercial general liability policy because a failure of workmanship does not involve the fortuity required to constitute an accident” (9A Steven Plitt et al., Couch on Insurance 3d § 129:4 [2008]; Pennsylvania Natl. Mut. Cas. Ins. Co. v Parkshore Dev. Corp., 2008 WL 4276917, *4, 2008 US Dist LEXIS 71318, *9-12 [D NJ 2008], affd 403 Fed Appx 770 [3d Cir 2010]).
In Uniroyal, Inc. v Home Ins. Co. (707 F Supp 1368, 1381 [ED NY 1988]), the United States District Court for the Eastern District of New York explained that a definition of “occurrence” that includes a “happening” or “event” as well as an “accident” was developed by the insurance industry “to provide clearly for coverage of gradual, continuous, and prolonged events that might have been excluded by the instantaneous connotation of ‘accident.’ ” Thus, the addition of “happening” or “event” to the definition of “occurrence” does not change the fact that fortuity is still an essential consideration under New Jersey and New York law when determining whether there is coverage under such a policy, and a claim for faulty workmanship simply does not involve fortuity.
We decline defendants’ suggestion that instead of applying the foregoing New Jersey and New York case law, we apply the *109 reasoning adopted in other jurisdictions under which faulty work may be treated as an “occurrence.” Adopting the definition of “occurrence” propounded by Turner and Permasteelisa to cover the breach of contract and poor workmanship claims against them would essentially transform National Union’s policy into a surety or performance bond. That is not the nature of the coverage GSJC obtained.
We therefore affirm the grant of summary judgment declaring that National Union is not obligated to defend or indemnify Turner and Permasteelisa in the underlying action.
Having granted summary judgment on the coverage issue, the motion court also, without discussion, directed that National Union be reimbursed the cost of defending these claims, which additional relief, although asked for in National Union’s complaint, was not mentioned in its motion.
New Jersey law permits reimbursement of costs incurred in defending claims that are later determined not to be covered. Where “an insurer, having honored its duty to defend, sought reimbursement from an insured for those fees incurred in defending uncovered claims, . . . the right of reimbursement exists because the insured would be unjustly enriched in benefit-ting by, without paying for, the defense of a non-covered claim” (see Hebela v Healthcare Ins. Co., 370 NJ Super 260, 279, 851 A2d 75, 86 [App Div 2004], citing Buss v Superior Ct., 16 Cal 4th 35, 50-53, 939 P2d 766, 776-778 [1997]).
However, an insurer’s entitlement to recoup its defense costs from its insured must not contravene the terms of the policy, since “[c]ourts must determine the rights and obligations of parties under an insurance contract based on the policy’s specific language” (Pepper v Allstate Ins. Co., 20 AD3d 633, 634 [3d Dept 2005]; see Webb v Witt, 379 NJ Super 18, 33, 876 A2d 858, 866 [App Div 2005]).
Policy endorsement MS #00004 provides, “This policy is primary coverage and the insurance carrier agrees not to take action or recourse against any insured for loss paid or expenses incurred because of any claims made against this policy.” The insurer argues that this provision only precludes it from seeking to recoup from its insured the cost of defending against covered claims. However, there is nothing in the endorsement’s language that differentiates between covered and uncovered claims; the endorsement precludes the insurer from seeking “recourse against any insured for . . . expenses incurred because of any claims made against this policy,” without *110 reference to whether those claims were ultimately found to be covered by the policy. Therefore, we hold that the reimbursement of defense costs sought by the insurer is unambiguously precluded by the policy, and the provision of the order on appeal that directs the reimbursement of those costs is vacated.
Accordingly, the order of the Supreme Court, New York County (Shirley Werner Kornreich, J.), entered June 19, 2012, which granted plaintiffs motion for summary judgment declaring that it has no duty to defend or indemnify defendants Turner Construction Company and Permasteelisa North America Corporation in the underlying action, and directed Turner and Permasteelisa to reimburse plaintiff the defense fees and costs it paid in that action, should be modified, on the law, to vacate the direction to reimburse plaintiff its defense costs, and otherwise affirmed, without costs.
Gonzalez, PJ., Tom, Friedman and Andrias, JJ., concur.
Order, Supreme Court, New York County, entered June 19, 2012, modified, on the law, to vacate the direction to reimburse plaintiff its defense costs, and otherwise affirmed, without costs.