**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3685
_____

THE TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,

Appellant

v.

USA CONTAINER CO., INC.

_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No.: 2-09-cv-01612)
District Judge: Honorable Jose L. Linares
_____

Argued on March 9, 2017

Before: HARDIMAN, VANASKIE, and RENDELL, Circuit Judges.

(Opinion filed: April 18, 2017)

John M. Bowens [ARGUED]
Valerie A. Vladyka
Schenck Price Smith & King
220 Park Avenue
P.O. Box 991
Florham Park, NJ 07932

*Counsel for Appellant*

Kenneth L. Moskowitz
Steven R. Rowland [ARGUED]
Shalom D. Stone
Brown Moskowitz & Kallen
180 River Road
Summit, NJ 07901

      *Counsel for Appellee*

_____

O P I N I O N*
_____

**RENDELL,** <u>Circuit Judge</u>,

This action arises from a protracted insurance dispute between Appellee USA Container Co., Inc. ("USA Container"), a company that supplies industrial containers, logistical services, and warehousing, and its insurer, Appellant Travelers Property Casualty Company of America ("Travelers"). Because we write for the benefit of the parties, who by now are well familiar with the details of this case, we will recount only the essential facts.

In 2006, USA Container contracted with Meelunie B.V./Amsterdam ("Meelunie"), a corn syrup distributor, to arrange for the transfer of corn syrup from rail cars to drums and then on to Meelunie's customers overseas. For the corn syrup to be moved from the rail cars to the drums, it had to be heated in accordance with standard operating procedures ("SOPs") developed by Meelunie's corn syrup supplier, Archer Daniels Midland. USA Container subcontracted with Passaic River Terminal, LLC ("Passaic

---

   * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

River") to perform all of the work necessary to transfer the corn syrup to the drums for transport. Passaic River failed to follow the SOPs and damaged Meelunie's corn syrup by overheating it. The damage was discovered after the corn syrup was shipped to Meelunie's customers, who rejected it. Meelunie subsequently sold the corn syrup at a reduced rate and ultimately incurred $782,723.77 in damages. Meelunie demanded that USA Container compensate it for its loss and USA Container turned to Travelers, claiming coverage for the loss. Travelers denied USA Container's claim, asserting that the damage was not covered under the terms of the parties' Commercial General Liability policy (the "CGL Policy"). USA Container and Meelunie later entered into a settlement agreement (the "Settlement Agreement"). Multiple rounds of litigation between USA Container and Travelers followed, and the District Court issued two orders, first finding that the CGL Policy covered the property damage, and second that Travelers was obligated to pay USA Container for its loss in the amount of $732,000 as set forth in the Settlement Agreement. The District Court also awarded USA Container prejudgment interest and attorney's fees. Travelers timely appealed the District Court's orders.

The issues we must now address are: (1) whether USA Container's loss arising from the damage to the corn syrup is covered under the terms of the CGL Policy, (2) whether the District Court correctly concluded that USA Container's loss under the Settlement Agreement was for $732,000 and (3) whether the District Court correctly calculated prejudgment interest and attorney's fees.

3

Before we begin our analysis, we note that the Erie doctrine instructs that where, as here, a federal court sits in diversity, state substantive law applies.[1] *Gasperini v. Ctr. of Humanities, Inc.*, 518 U.S. 415, 427 (1996). Here, New Jersey law applies and, as we have long held under Erie, a federal court is bound to follow state law as announced by the state's highest court (here, the New Jersey Supreme Court). *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 361 (3d Cir. 2007).

## I. Insurance Coverage

The District Court granted USA Container's motion for partial summary judgment on its breach of contract claim against Travelers.[2] We review a grant of summary judgment de novo under the same standard as the district court applied.[3] *Cypress Point Condominium Ass'n, Inc. v. Adria Towers, L.L.C.*, 143 A.3d 273, 279–280 (N.J. 2016). Because there is no genuine issue of material fact before us, we do not afford deference to the District Court's legal determinations and instead review its coverage conclusions de novo. *Id.* at 280.

---

[1] The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332 and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

[2] USA Container had sought a ruling that the CGL Policy "provides USA Container coverage for the claims of Meelunie . . . arising from subcontractor Passaic River's damage to Meelunie's corn syrup, and that Travelers breached its duty to defend and indemnify USA Container." A. 7.

[3] A court grants summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

4

The issue of insurance coverage turns on the terms of the CGL Policy that USA Container procured from Travelers. The parties agree that, as the insured, USA Container has the burden to prove coverage, while the burden to prove the applicability of any exclusion falls on the insurer, Travelers.

A. Occurrence[4]

The CGL Policy provides, in relevant part, that Travelers is required "to pay those sums that [USA Container] becomes legally obligated to pay as damages because of . . . 'property damage' to which the insurance applies." A. 75. The insurance applies to "property damage"[5] if it is caused by an "occurrence," *id.*, which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." A. 88. In *Cypress Point*, an opinion the New Jersey Supreme Court issued after the District Court's partial summary judgment grant, the court defined an "accident" as "encompass[ing] unintended and unexpected harm caused by negligent

---

[4] On October 22, 2015, Travelers withdrew its appeal of the issue "whether claims asserted against USA Container fall within the definition of 'occurrence.'" Appellant's Mot. to Withdraw Only "Occurrence" Issue from Present Appeal, Oct. 22, 2015, Dkt. No. 37. Travelers stated during oral argument before this Court on March 9, 2017 that its withdrawal motion effectively conceded that, under the terms of the CGL Policy, an "occurrence" resulted in the damage to the corn syrup. This Court never acted on Travelers' withdrawal motion and as such we will address the occurrence issue. We also note that both parties addressed it in their supplemental briefs and at the March 9, 2017 oral argument.

[5] At the District Court, Travelers did not argue that the Meelunie damage does not constitute "property damage" under the CGL Policy, nor did it do so on appeal. Therefore, that argument is forfeited. *United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005).

conduct."[6] 143 A.3d at 287. The property damage that occurred here clearly meets the criteria of this test.

Travelers disregards the broad contours of this "occurrence" test and urges instead that there is a "faulty workmanship" limitation on the CGL Policy's initial grant of coverage. Travelers reiterates this as the central point throughout its supplemental briefs – that the CGL Policy does not provide coverage to replace or repair defective work – and dismisses the damages here as "economic damages" that it maintains are never covered because they are part of the foreseeable risk inherent in any job. Travelers relies on *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788 (N.J. 1979), for this proposition.[7] But in *Cypress Point*, the New Jersey Supreme Court rejected this very argument: "[R]elying on *Weedo*, the insurers assert that damage to an insured's work caused by a subcontractor's faulty workmanship is foreseeable to the insured developer because

---

[6] *Cypress Point* bears directly on the insurance coverage question in this case. We reject Travelers' efforts to dismiss the salience of *Cypress Point* on the grounds that it dealt with an exclusion not at issue here. The court's analysis of "occurrence" is completely independent of the exclusion and applies to the same basic coverage terms as those in the CGL Policy here. Further, the principles with which *Cypress Point* interprets the policy as a whole are not contingent on the specifics of any exclusion.

[7] In *Weedo*, which dealt with a now-outdated version of the standard CGL form, the parties conceded that there was an occurrence and that the only remaining issue was the application of exclusions. The New Jersey Supreme Court held that CGL policies do not indemnify insureds where the damages claimed are the cost of correcting the alleged defective work. 405 A.2d at 791–92. The Appellate Division later extended *Weedo* by applying the business risk logic of the exclusions at issue in *Weedo* to the first-order question of whether there is an occurrence. *Firemen's Ins. Co. v. Nat'l Union Fire Ins. Co.*, 904 A.2d 754, 759 (N.J. Super. Ct. App. Div. 2006). *Cypress Point* effectively rejected this extension, cabining *Weedo* to questions pertaining to exclusions and not to "the question of initial coverage." 143 A.3d at 287.

damage to any portion of the completed project is the normal, predictable risk of doing business. . . . We disagree." 143 A.3d at 287. The court also cited favorably to *U.S. Fire Insurance Co. v. J.S.U.B., Inc.*, 979 So.2d 871 (Fla. 2007), where the Florida Supreme Court rejected an insurer's argument that faulty workmanship can never be an accident because it results in reasonably foreseeable damages; and "confirm[ed] that the 1986 revisions to the standard CGL policy . . . specifically cover[ed] damage caused by faulty workmanship to other parts of work in progress; and damage to, or caused by, a subcontractor's work after the insured's operations are completed."[8] *Cypress Point*, 143 A.3d at 282 (alterations in original) (citation and quotation marks omitted). Relatedly, *Cypress Point* noted that *U.S. Fire* represents a "strong recent trend in the case law [of most federal circuit and state courts] interpret[ing] the term 'occurrence' to encompass unanticipated damage to nondefective property resulting from poor workmanship." *Id.* at 285 (alterations in original) (citation omitted).

Accordingly, we affirm the District Court's finding that USA Container's claim falls within the basic coverage provisions of the CGL Policy.[9]

---

[8] *U.S. Fire* also explicitly rejected assessing an occurrence based on its impact on *other* property: "[W]e fail to see how defective work that results in a claim against the contractor because of injury to a third party or damage to a third party's property is 'unforeseeable,' while the same defective work that results in a claim against the contractor because of damage to the completed project is 'foreseeable.'" 979 So. 2d at 883.

[9] It appears that our decision today conflicts with a non-precedential opinion previously issued by this Court. In *Pennsylvania National Mutual Casualty Insurance Co. v. Parkshore Development Corp.*, 403 F. App'x 770 (3d Cir. 2010), the insured was the general contractor for a condominium development. The insured subcontracted the caulking of windows, but it was not done properly and resulted in water leakage. The

7

B. Exclusions

Travelers asserts that even if the occurrence issue were resolved against it, two exclusions, j(6) and n, apply to this case, and that each would be sufficient to relieve Travelers of its obligation under the CGL Policy to cover USA Container's loss. These assertions are incorrect.

Exclusion j(6) provides that coverage shall not extend to "[t]hat particular part of any property that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it." A. 78. The District Court correctly noted that Meelunie's damaged corn syrup was not "restored, repaired, or replaced" as required by Exclusion j(6)'s clear terms. As it did before the District Court, and then again before this Court during oral argument on March 9, 2017, Travelers has failed to identify any evidence to the contrary. Nor can it point to any contractual provision that makes it such that the corn syrup, if damaged, "must be" restored, repaired, or replaced.[10] While Travelers urges in its most recent brief that Meelunie's damages "cannot be characterized as anything other than damages associated with the *repair/replacement* of the product rejected due to USA Container's faulty work," Appellant's Supp. Br. 8 (emphasis added), this claim is baseless, and Travelers does not – and cannot – point to anything in the record to support

---

panel held that "[w]hile other courts have permitted an 'occurrence' where faulty construction damages only the insured's own work, New Jersey courts foreclose such a possibility" because of the *Weedo* line of cases. 403 F. App'x at 772 (footnote omitted). *Cypress Point* rejects that notion.

[10] Under the terms of Exclusion j(6), it is not sufficient if the corn syrup *could* have been restored, repaired, or replaced.

8

it.  Indeed, the record clearly reflects Travelers' own awareness that Meelunie sold the corn syrup at a reduced rate because of the damage.  *See* A. 287.

Travelers' attempt to impose a business risk exclusion based on Exclusion j(6) fares no better.  This exclusion is not about *any* risks inherent in any business; it is about clearly demarcated scenarios that did not occur here.  As *Cypress Point* noted, if an insurer identifies a risk that it does not want to insure, "it can clearly amend the policy to exclude coverage."  143 A.3d at 289.  Travelers did not fashion a business risk or "your work" exclusion that would apply to this set of facts when it negotiated the CGL Policy with USA Container, and it may not retroactively do so now.[11,12]

Travelers makes a weak argument as to Exclusion n, which applies to events that did not occur here:  precautionary recalls.  *See Newark Ins. Co. v. Acupac Packaging, Inc.*, 746 A.2d 47, 56 (N.J. Super. Ct. App. Div. 2000).  It is questionable whether we can even properly consider Exclusion n because Travelers did not invoke it until responding to USA Container's brief in support of its motion for summary judgment.  But potential procedural infirmity aside, it is abundantly clear that this exclusion is irrelevant to this case.  The record does not in any way suggest, let alone establish, that Meelunie ever

---

[11] *Cypress Point* underscores this basic tenet of contract law:  "[C]ourts enforce contracts based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract. . . . Thus, when the terms of an insurance contract are clear, it is the function of a court to enforce it as written and not to make a better contract for either of the parties."  143 A.3d at 280 (citations and quotation marks omitted).

[12] Interestingly, the CGL Policy contains a limited "your work" exclusion – Exclusion (l) – but Travelers has not urged, nor could it, that it applies here.

recalled the damaged corn syrup. To the contrary, Travelers' own investigation showed that Meelunie *sold* the damaged corn syrup at a reduced price.

We therefore affirm the District Court's finding that neither Exclusion j(6) nor Exclusion n applies to this case. Accordingly, USA Container's loss is covered under the terms of the CGL Policy.

## II. Settlement Agreement

Travelers argues that the District Court erred in interpreting USA Container's loss under the Settlement Agreement to be $732,000 and awarding that amount to USA Container. Because we agree that the District Court erred in its interpretation, we will vacate its order and remand for entry of judgment for loss of $425,000 to USA Container and for an award of $425,000 to USA Container.

"A settlement agreement between parties to a lawsuit is a contract," *Nolan v. Lee Ho*, 577 A.2d 143, 146 (N.J. 1990), and we review a district court's interpretation de novo, *Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med. & Physical Therapy*, 46 A.3d 1272, 1276 (N.J. 2012) (interpretation of a contract is a question of law).

The Settlement Agreement obligated USA Container to pay Meelunie $425,000 in two installments, and USA Container paid that amount. The Settlement Agreement also contained the following provision:

> *In the event that* USA Container receives any monies, proceeds, or compensation from Passaic River, an insurance carrier[,] or any other third party for damages alleged in the Lawsuit . . . then USA Container and

10

> Meelunie *shall share equally* in any such recovery . . . . *At that such time* that Meelunie has received payment totaling [$732,000] from USA Container, Passaic River, any insurance carrier and/or any other party concerning the claims it has asserted in the Lawsuit, then any and all additional funds recovered by USA Container from any third party shall belong exclusively to USA Container.

A. 528–29 (emphasis added). Thus, USA Container committed to paying Meelunie a maximum additional $307,000 *only if* it receives payment from another party at some point in the future. The sharing scenario imagined by the Settlement Agreement – USA Container splits its additional recovery with Meelunie until Meelunie has recouped $732,000 – is purely hypothetical. USA Container has not parted with any money under this provision.

In finding the Settlement Agreement to be for $732,000, the District Court focused on New Jersey law's concern that settlement agreements be "reasonable" and entered into in "good faith." A. 22. But that focus, which USA Container underscores in its briefs, is off-point as Travelers does not directly urge that these criteria are not satisfied here, but rather, that the Settlement Agreement does not support a loss to USA Container in the amount of $732,000. Travelers argues instead that while $732,000 is a maximum amount that USA Container could recover under the terms of the Settlement Agreement, its loss is limited to $425,000.

The language of the leading New Jersey case on settlement obligations is instructive:

> [T]he insurer is liable for the amount . . . of the settlement *made* by [the insured]. The only qualifications to this rule are that the amount *paid* in the settlement be reasonable and that the payment be made in good faith . . . . The measure of the insured's damages is . . . the amount *paid* by the insured

11

in making a reasonable good faith settlement of the negligence action before trial.

*Fireman's Fund Ins. Co. of Hartford v. Sec. Ins. Co.*, 367 A.2d 864, 868, 872–73 (N.J. 1976) (citation omitted) (emphasis added).[13] *Fireman's* clearly contemplates coverage for money *already* paid – an amount that is not inclusive of money that *might* be paid in the future. Moreover, any amount that might be paid upon recovery from a third party is merely a share of the amount paid by the third party, not an amount that USA Container would part with from its own funds. It is not reflective of its loss.

Thus, the District Court erred in construing the Settlement Agreement so as to support a claim for $732,000. Instead, "the amount paid by the insured" was $425,000. We therefore vacate the District Court's order and will remand for entry of judgment for loss of $425,000 to USA Container and for an award of $425,000 to USA Container as per the terms of the Settlement Agreement.

III. Prejudgment Interest and Attorney's Fees

The District Court awarded prejudgment interest of $51,852.77 to USA Container. It calculated this amount as accruing from the date that Travelers (wrongly) denied coverage to USA Container, rejecting both Travelers' argument to calculate from the date

---

[13] The Settlement Agreement leaves each party with an indeterminate amount, subjecting Meelunie's total recovery to possible – but not guaranteed – third-party payments. USA Container's recovery is similarly conditional on the steps, if any, Passaic River or another entity may take in the future. Though *Fireman's* did not directly address how courts ought to construe settlement agreements with indeterminate amounts, we nonetheless find its holding instructive.

12

USA Container made the $425,000 Settlement Agreement payment to Meelunie, and USA Container's argument to calculate from the date Travelers completed its investigation of USA Container's insurance claim. The District Court then applied interest rates reported by the New Jersey Cash Management Fund to the sum of $732,000, the amount it determined as the settlement amount.

The standard of review for a district court's prejudgment interest calculation is "manifest denial of justice." *Litton Indus., Inc. v. IMO Indus., Inc.*, 982 A.2d 420, 431 (N.J. 2009). "The same discretion applicable to a court's determination of the appropriate pre-judgment interest rate applies to the court's determination of the date upon which pre-judgment interest will begin to accrue." *Munich Reinsurance Am., Inc. v. Tower Ins. Co. of N.Y.*, Civ. Action No. 09-2598 (FLW), 2012 WL 1018799, at *3 (D.N.J. Mar. 26, 2012).

Because we find that the District Court erred in its calculation of the underlying amount of the Settlement Agreement, despite the highly deferential standard of review, we will vacate and remand the prejudgment interest calculation to be recalculated based on the new figure of $425,000.[14]

---

[14] We also note that the New Jersey Supreme Court supports Travelers' position with respect to the date from which to calculate prejudgment interest – namely, that prejudgment interest should run from the date that the insured paid the claimant. *Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am.*, 323 A.2d 495, 512 (N.J. 1974). At the same time, we recognize that New Jersey case law specifically leaves such date selection to a district court's discretion. *See AGS Computs., Inc. v. Bear, Stearns & Co.*, 581 A.2d 508, 510 (N.J. Super. Ct. App. Div. 1990) (reversing the trial judge's denial of prejudgment interest but giving the trial judge discretion to determine the date from which interest is to run); *Ellmex Const. Co., Inc. v. Republic Ins. Co.*, 494 A.2d 339, 349 (N.J. Super. App. Div. 1985) (reversing the trial judge's denial of prejudgment interest but indicating that

IV. Attorney's Fees

Under New Jersey law, "fee determinations by trial courts will be disturbed only on the rarest occasions, and then only because of a clear abuse of discretion." *Rendine v. Pantzer*, 661 A.2d 1202, 1217 (N.J. 1995). The soundness of the District Court's reasoning for awarding USA Container attorney's fees in the amount of $256,512.95 is apparent on its face and we will affirm the award.

V. Conclusion

For the foregoing reasons, we will (1) **Affirm** the District Court's finding that USA Container's claim falls within the basic coverage provisions of the CGL Policy and that exclusions j(6) and n do not apply; (2) **Vacate** the District Court's ruling that the Settlement Agreement is for $732,000; (3) **Vacate** the District Court's calculation of prejudgment interest; (4) **Remand** for (a) entry of judgment for loss of $425,000 to USA Container under the Settlement Agreement and for an award of $425,000 to USA Container, and for (b) recalculation of prejudgment interest; and (5) **Affirm** the District Court's award of attorney's fees.

---

prejudgment interest can reasonably be calculated from either the date a claim was denied or from defendant's receipt of plaintiff's sworn proof of loss).

14